No. 10,474.

## WALTON *v.* THE STATE.

CRIMINAL LAW.—*Penal Department of Indiana Reformatory for Women and Girls.—State Prison.—Repeal of Statute.—Statute Construed.*—The penal department of the Reformatory for Women and Girls, established under the act of May 13th, 1869 (sections 6162 to 6202, R. S. 1881), is a State prison within the meaning of that expression, as used in the act of April 14th, 1881, "concerning public offences and their punishment"; and the taking effect of the later act did not, in terms or by implication, repeal or abrogate any of the provisions of the older statute.

SAME.—*Conspiracy.—Acts and Declarations of Co-Conspirator.—Original Evidence.—Trial Court.—Prima Facie Case.*—When the trial court is satisfied that the offered evidence tends to establish *prima facie* the fact of a conspiracy between the parties, every act or declaration of any party to the conspiracy, in furtherance of the common design, whether done or said before or after the formation of such conspiracy, is competent original evidence against each and all of the parties.

SAME.—*Evidence.—Impeachment of Witness.—General Moral Character.—Belief of Impeaching Witness.*—Where, in a criminal cause, either party seeks,

to impeach the evidence of any witness, the general moral character of such witness may be given in evidence; but, in such case, the opinion of the impeaching witness, on direct or cross examination, as to whether or not he would believe the witness sought to be impeached under oath, is not competent evidence and ought to be excluded.

From the Decatur Circuit Court.

*E. P. Ferris, W. A. Moore,* —— *Bennett, W. W. Spencer* and *J. S. Ferris,* for appellant.

*F. T. Hord,* Attorney General, *M. D. Tackett,* Prosecuting Attorney, and *J. D. Miller,* for the State.

HOWK, J.—In this case the indictment first charged, in full and technical language, one Aaron Frazer with murder in the first degree, in and by his shooting and killing one John M. Walton on the 9th day of January, 1882, at and in Decatur county, Indiana; and the indictment then proceeded as follows:

"And the grand jurors aforesaid, on their oath aforesaid, do further present and charge that the said Ellen V. Walton was then and there accessory before the fact to the said felony, and before the commission thereof by the said Aaron Frazer as aforesaid, to wit, on the said ninth day of January, A. D. 1882, at and in the said county of Decatur, and State of Indiana, said Ellen Walton did then and there unlawfully, feloniously, wilfully, purposely and with premeditated malice, counsel, procure, command, urge, hire, aid and abet the said Aaron Frazer, and, in other ways to the grand jurors unknown, help, assist, aid and abet the said Aaron Frazer to commit the said felony in manner and form aforesaid."

Upon arraignment and a plea of not guilty, the issues joined were tried by a jury, and the following verdict was returned, to wit:

"We, the jury, find the defendant guilty as charged in the indictment, and that she be imprisoned in the penal department of the Indiana Reformatory Institution for Women and Girls during life." (Signed) "JOHN BLUE, Foreman."

The appellant's motion for a *venire de novo* having been

overruled, and her exception saved to the ruling, the court rendered judgment against her in accordance with the verdict. Afterwards, at the same term of the court, the appellant's motion for a new trial was also overruled, and to this decision she excepted and appealed from the judgment rendered to this court.

The first question presented and discussed by counsel relates to the punishment assessed against the appellant in the verdict of the jury, and confirmed by the judgment of the court. It is earnestly insisted by the appellant's counsel that at the time of the trial of this cause, and of the rendition of the judgment therein, there was no law in force in this State which authorized the jury in their verdict of guilty, as charged in the indictment, to assess the appellant's punishment at imprisonment in the penal department of the Indiana Reformatory Institution for Women and Girls during life. This objection to the verdict was presented to the trial court in the written motion for a *venire de novo*, and as cause for a new trial, and by an exception to the judgment, and the error, if it be an error, is properly saved in the record, and the question must be decided.

In section 49 of the felony act of June 10th, 1852, it was provided that an accessory before the fact should suffer the same punishment and penalties which were by law prescribed for the punishment of the principal; and in section 4 of the same act it was provided that any person convicted of murder in the first degree might, instead of being sentenced to death, in the discretion of the jury, be imprisoned in the State's prison during life. Under these statutory provisions, the sex of the criminal was not necessarily to be considered in assessing the punishment; and so the law continued until the act of May 13th, 1869, "to establish a Female Prison and Reformatory Institution for Girls and Women," etc., took effect and became a law. In section 16 of that act it was provided as follows:

"After the penal department of said institution shall have

been proclaimed open for the reception of female convicts, as hereinbefore provided, it shall not be lawful for any court to sentence any female convict to the State prison upon conviction of any crime, but, thereafter, every female convict shall be sentenced to imprisonment in the penal department of the institution created by this act; and the term of imprisonment for which such female convict may be sentenced shall be any period of time for which she might, on conviction, have been sentenced to the State prison at or prior to the passage of this act." Section 6177, R. S. 1881.

The effect of this section, after it became in force, was to amend or modify all the provisions of the felony laws, so that thereafter women and girls could not, upon conviction of any crime, be sentenced to the State prison, previously existing and known by that name.

So the law remained until the 19th day of September, 1881, when the act of April 14th, 1881, " concerning public offences and their punishment," took effect and became the law. Section 3 of this act (section 1904, R. S. 1881,) provides as follows :

" Whoever purposely and with premeditated malice, * * * * * kills any human being, is guilty of murder in the first degree, and, upon conviction thereof, shall suffer death or be imprisoned in the State prison during life, in the discretion of the jury."

And in section 213 of the act of April 19th, 1881, " concerning proceedings in criminal cases," which act also became a law on the 19th day of September, 1881 (section 1788, R. S. 1881), it was provided as follows :

" Every person who shall aid or abet in the commission of any felony ; or who shall counsel, encourage, hire, command, or otherwise procure such felony to be committed,—shall be deemed an accessory before the fact, and may be tried and convicted in the same manner as if he were a principal, and either before or after the principal offender is convicted, and charged or indicted ; and upon such conviction he shall suffer

the same punishment and penalties as are prescribed by law for the punishment of the 'principal."

So far. as this case is concerned it is provided, in section 300 of the public offence act of April 14th, 1881, that "All laws in conflict with this act are hereby repealed."

Upon these statutory provisions of recent enactment the appellant's counsel found their argument in support of their position, that the law in force at the time of the trial did not authorize the jury, in their verdict of guilty, to assess the appellant's punishment at imprisonment in the penal department of the Indiana Reformatory Institution for Women and Girls during life. The criminal laws of 1881 provide, in effect, that every person, without regard to sex, who may be found guilty, whether as a principal or as an accessory before the fact, of murder in the first degree, "shall suffer death, or be imprisoned in the State prison during life, in the discretion of the jury." It will be observed that the only imprisonment provided for as a punishment for murder in the first degree, either of the principal or of the accessory before the fact, is in the State prison; and that, by the public offence act of April 14th, 1881, all laws in conflict therewith are expressly repealed. It is contended by the appellant's counsel that, by force of the provisions of the criminal laws of 1881, and of the express repeal of all laws in conflict therewith, section 16, above quoted, of the act of May 13th, 1869, establishing a female prison, is repealed; and that there is no other law now in force which authorized the jury to assess the appellant's punishment at imprisonment in the penal department of the Indiana Reformatory Institution for Women and Girls. The fallacy of this contention lies in the fact, as it seems to us, that it assumes that the penal department of the Indiana Reformatory Institution is not a State prison; when, under the law providing for the establishment, management and government of the institution, its penal department is in every sense a State prison, as much so as either of the other State prisons, Secs. 6162 to 6202, R. S. 1881.

We are of the opinion, therefore, that the provisions of section 16, above quoted, of the act of May 13th, 1869, establishing a female prison, are not repealed, either expressly or by implication, by the criminal laws of 1881, but are still in full force; and that the punishment assessed against the appellant in the verdict of the jury was authorized by law. It follows that no error was committed by the court, as we think, in overruling the motion for a *venire de novo,* or the motion for a new trial for the alleged error in the verdict, and that the exception to the judgment was not well taken.

It is claimed by the appellant's counsel that the verdict of the jury was not sustained by sufficient evidence, and was contrary to law. The indictment charged that the murder of John M. Walton was committed by Aaron Frazer, and that the appellant was an accessory before the fact in the commission of the felony. The theory of the prosecution against the appellant is that the murder of John M. Walton was the result of a conspiracy by and between one Oscar M. Garrett, Aaron Frazer and the appellant to commit that particular crime; that Frazer was the active agent in the perpetration of the murder; but that, before the fact, Garrett and the appellant counselled, procured, commanded, urged and hired Frazer to commit the murder. Appellant's counsel concede in their brief that " the evidence shows that Oscar M. Garrett and Aaron Frazer conspired together; but," they say, "there is no evidence of any conversations between appellant and Garrett, and but one between appellant and Frazer." Counsel add: " There is no proof whatever of any conversation between the appellant and Garrett in reference to any conspiracy; she was not present at any conversation between Garrett and Frazer in reference to the killing, or in reference to any acts of violence toward John M. Walton."

Aaron Frazer was the principal witness for the State in this prosecution, and the major part of his evidence on the trial would have been irrelevant and incompetent, in the absence of proof to the satisfaction of the trial court, that a

conspiracy existed between Garrett, Frazer and the appellant for the murder of John M. Walton at and before the commission of the crime, and that it was the result of the conspiracy. On this point Mr. Greenleaf says: "A foundation must first be laid by proof sufficient in the opinion of the judge to establish *prima facie* the fact of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact. The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all; and is therefore original evidence against each of them. It makes no difference at what time any one entered into the conspiracy. Every one who does enter into a common purpose or design is generally deemed, in law, a party to every act which had before been done by others and a party to every act which may afterwards be done by any of the others in furtherance of such common design." 1 Greenl. Ev., section 111. *Jones* v. *State*, 64 Ind. 473.

It is earnestly insisted by the appellant's counsel that the evidence was not sufficient to establish *prima facie* the appellant's connection with the conspiracy, admitted to have been shown between Garrett and Frazer, for the murder of John M. Walton. We are of the opinion, however, that the evidence in regard to the appellant's entry into and connection with that conspiracy between Garrett and Frazer was sufficient to justify the trial court in permitting it to be introduced to the jury as tending to establish such fact. The conspiracy between Garrett and Frazer was shown by the testimony of Frazer; and his testimony also tended to show that Garrett had communicated the fact of their conspiracy to the appellant, and to establish her connection therewith. In giving a conversation between the appellant and herself, Frazer testified as follows: " She asked me if her man had been there? I told her that he had been there and was gone. She asked

me, what did he have to say? I told her he said a good many things, as usual. She asked me if he said anything about putting 'Jack' out of the way. She called her husband 'Jack' and Garrett 'her man.' Says I, he did; Mrs. Walton, says I, how is this? She said anything he wants done or said it was all right; for there was nothing that she had she thought was too good for him."

It was proper, we think, that this testimony should go to the jury, as tending to establish the fact of a conspiracy by and between the appellant and Garrett and Frazer, for the murder of John M. Walton. Of course, the weight to be given to the evidence, and the credibility of the witness, were alike questions for the jury. When the jury and trial court were satisfied of the fact of the conspiracy for the murder of Walton, and that the appellant was in the conspiracy, there was an abundance of evidence to establish her guilt and sustain her conviction. We can not disturb the verdict on the evidence, even though it may seem to us that, if we had been on the jury, we should have reached a different conclusion and found a different verdict. For the question was one of fact peculiarly within the province of the jury, and the evidence was to satisfy the minds of the jury, not the minds of this court, beyond a reasonable doubt, of the guilt of the appellant of the crime charged. The evidence, if believed, may have satisfied, and doubtless did satisfy, the jury that appellant was a member of the conspiracy for the murder of her husband; and we can not say, by any means, that the evidence was not sufficient to authorize and justify the verdict of the jury.

The appellant's counsel next complain of the rulings of the trial court, in admitting in evidence certain statements or declarations made by Garrett before the murder of Walton, in the absence of the appellant. One of these declarations of Garrett, made six weeks before the murder, and testified to by two witnesses, was to the following effect: "He said there was something terrible going to happen; he said he would not tell us, but that we would hear it soon after it happened."

The other statement of Garrett, made about three weeks before the murder and testified to by three witnesses, was in substance as follows: "Garrett was talking about how unfortunate the Walton family had been—the accidents they had in the family. He just made the remark that that was the second time the coroner was called, and it would not be the last time; and the next time he would be called for one of their own." It is claimed by appellant's counsel that these declarations of Garrett, made in the absence of the appellant, were not competent evidence against her. Upon the theory, however, that a conspiracy between her and Garrett and Frazer for the murder of her husband was shown *prima facie* to exist, it seems to us that these evil-boding declarations of Garrett, made pending the conspiracy and before the murder was committed, were admissible in evidence for what they were worth, against the appellant as one of the conspirators. These declarations were shown to have been made during the pendency of the criminal enterprise and before its accomplishment; and, while they were not indicative of the appellant's guilt, they tended to show that Garrett's mind was brooding over the conspiracy, of which she then was or thereafter became a member, for the murder of John M. Walton. Standing alone, of course these declarations amounted to but little, if anything; but, when coupled with other facts and circumstances in evidence, their tendency was to show that the alleged conspiracy was even then afoot. In their admission in evidence, therefore, the court committed no error which would authorize the reversal of the judgment below. *Williams* v. *State*, 47 Ind. 568.

It was the theory of the State, in the trial of this cause, that, in the murder of John M. Walton, Aaron Frazer acted, by the procurement of both Garrett and the appellant. The State sought to show by its evidence that Garrett and the appellant were influenced by the same motives and had a common design in view, in seeking the death of John M. Walton.

The theory of the State was that an adulterous connection existed between Garrett and the appellant, that the presence of John M. Walton interfered with their illicit intercourse, and that they had a common purpose and design in procuring Frazer to kill Walton and put him out of the way of their enjoyment of their unholy love. For the purpose of showing the existence of an illegal and improper intimacy between Garrett and the appellant, the court admitted evidence of many circumstances trivial in themselves and apparently immaterial; but these circumstances, when combined and unexplained, tended to establish and point out the motive, design or purpose which influenced or actuated them in their conspiracy with Frazer for the removal, by murder, of John M. Walton out of the way of their lustful intercourse. Some of these circumstances seem to us to be immaterial and entitled to very little weight; but we do not think that they prejudiced the substantial rights' of the appellant, and, therefore, their admission in evidence affords no sufficient ground for the reversal of the judgment. If we were to set out and comment upon each of the alleged errors of law in relation to the evidence in the case, this opinion would be unnecessarily prolonged; for it would be unavailing to the appellant, and no good purpose would be subserved thereby. It will suffice to say that, in our opinion, no substantial error was committed by the court in its rulings in regard to the admission of evidence.

After the appellant had testified as a witness in her own behalf, the State produced one Ellis Slifer as a witness, who testified, in chief, that he knew the general moral character of the appellant in the neighborhood in which she lived, and that it was bad. On cross-examination the appellant asked the witness Slifer the following question:

" From your knowledge of her general moral character, as you have testified, state whether or not you would believe Ellen V. Walton under oath?"

The State objected to this question, on the ground that it

was "immaterial, irrelevant and illegal," and the court sustained the objection, and the appellant at the time excepted. Appellant's counsel insist that the question to the witness was proper, and that the court erred in sustaining the State's objection thereto. We are of the opinion, however, that the question was not a proper one, even on cross-examination, and that the objection of the State thereto was correctly sustained. In section 1803, R. S. 1881, it is provided as follows:

"In all questions affecting the credibility of a witness, his general moral character may be given in evidence."

This section is a part of the criminal code of 1881, but the same provision, in precisely the same words, is found in section 505, R. S. 1881, as a part of the civil code of 1881. The question of the credibility of a witness is, in every case, a question for the jury or the trier of the facts. Where the credibility of a witness is in question in any case, criminal or civil, his general moral character in the neighborhood in which he lives may be given in evidence, to be considered by the trier of the facts in determining the credibility and weight of his testimony in the case in hand. It is wholly immaterial whether some other witness would or would not believe the particular witness under oath; especially so, as the opinion or belief of such other witness upon the question might be founded on or controlled by matters of personal knowledge, about which no enquiry could be properly made. This question was considered by this court in *Spivey* v. *State*, 8 Ind. 405, where it was said: "The jury were not bound by the opinion of the impeaching witnesses as to whether they could believe the prosecuting witness. The jury would believe or disbelieve her upon their own judgment of the facts in the case bearing upon the point. The opinions of the impeaching witnesses, as to the credibility of the prosecuting witness, were probably improperly admitted in evidence. The weight of authority is thought to be against the admission of such opinions, and general principles seem to us to be so." See, also, *Indianapolis, etc., R. W. Co.* v. *Anthony*, 43 Ind. 183, and

*Meyncke* v. *State, ex rel.,* 68 Ind. 401. We can not say that the question under consideration has been squarely decided in any of the previous decisions of this court, but we are satisfied that our conclusion in this case is right.

Appellant's counsel complain of the action of the court in sustaining the State's objections to certain questions propounded to the appellant as a witness in her own behalf, in relation to what was said between her and the sheriff, after her arrest, between her house and St. Paul, and in relation to what questions Garrett asked her, at an interview between them, after her arrest, in Hoover's saloon, and also as to what Garrett said to her, at that time, when she got up to go away. Without considering and commenting upon these questions separately, in this opinion, we may say generally in relation thereto that a careful examination of the record and of the arguments of counsel in connection therewith has led us to the conclusion that no substantial error was committed by the court in either of the rulings complained of.

It is earnestly insisted by the appellant's counsel that the trial court erred in its instructions to the jury, given of its own motion. Each of the instructions complained of has been carefully considered by this court, and the conclusion has been reached that the trial court committed no substantial error in either of those instructions as applied to the case at bar. Nor can we say that the court erred in its refusal to give the jury certain of the instructions asked by the appellant. Indeed, we think that the court gave the jury the law fully and fairly applicable to the case made by the evidence; and, certainly, it seems to us, from our reading of the record, that the appellant had a just and impartial trial, in strict conformity with the law, and that she has no legal cause of complaint in regard to any of the proceedings below. The judgment against her in this case seems to us to have been "tempered with mercy."

The judgment is affirmed, with costs.

Petition for a rehearing overruled.