Johnson, J.
The constitutionality of this act is challenged on two grounds.
1. Because section 11, article 3 of the constitution of Ohio vests in the governor the exclusive right, “to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as he may think proper; subject, however, to such regulations, as to the manner of applying for pardons, as may be prescribed by law.”
2. Because this act and these regulations provide for the. exercise of judicial power, and therefore are in conflict with section 1, article 4 of the constitution, which vests judicial power in the courts therein named.
By section 5 of the original act, passed March 24, 1884 (81 Ohio L. 72-76), it was provided that every sentence to-the penitentiary of a person thereafter convicted of a fel'ony, except for murder in the second degree, who had not previously been convicted of a felony and served a term in a penal institution, shall be, if the court thinks it right and proper, a general sentence of imprisonment in a. penitentiary. That is what is called an indeterminate sentence.
The term of such 'sentence may be terminated by the board of managers as authorized by the act, but no prisoner should be released until he has served at least the minimum term provided by law, nor can he be held longer than the maximum term so provided.
By section 6 the clerk of any court pronouncing a deter-' *645 mínate sentence is required to furnish to the warden, or other officer having such criminal in charge, a record containing a copy of the indictment and of any special plea, and the name and residence of the j udge; also the names of the j urors and witnesses, with a statement of any facts which the judge may deem important or necessary to a full comprehension of the case, and of the judge’s reasons for the sentence inflicted.
By section 7 the board of managers are required to, ■“ subject to the approval of the governor, make such rules and regulations for the government .of the prisoners as shall best promote their reformation ; ” by separation and classification of prisoners, division into grades, with promotion and degradation according to their merit, employment and instruction, and industry, their education, their conditional and absolute release. It is also provided that in no case shall a prisoner be released unless the managers have reasonable ground to believe he will, if released, live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society.
Section 8 of that act is in its main features the same as amended section 8 above quoted, but was limited to persons “hereafter convicted,” who had received an indeterminate sentence,.while amended section 8 applies to any prisoner “ who is now or hereafter maybe under sentence.” By this amendment the power of the board of managers to establish rules and regulations for the parole of prisoners outside of the buildings and inelosures of the penitentiary was extended to all prisonei’s serving a determinate sentence, whatever its date, except only those sentenced for murder in the first or second degree, or who had not previously been convicted of a felony and served a term in a penal institution.
Sections 5 and 7 of the original act were amended April 14, 1884. (81 Ohio L. 186.)
The amendment of section 7, “in order that good behavior may be properly rewarded,” requires that the daily record of behavior be kept of the conduct of each prisoner; provides that a convict who passes the entire period *646 of his imprisonment without violating the rules and discipline, shall, upon his release or discharge, be restored to his rights and privileges, forfeited by conviction, and shall receive from the governor, under the great seal of state, a certificate as evidence of such restoration. It is further provided for such restoration to convicts who have conducted themselves in an exemplary manner for not less than twelve consecutive months, upon application of ten or more citizens where the prisoner last resided. It is further provided under specific rules for the diminution of all determinate sentences, other than for life, by deductions for good conduct. It is also provided that for a violation of the rules and discipline, or want of fidelity and care in the performance of work, for a deduction from the time gained by good conduct.
A liberal discretion is vested in the board in administering this system of merit and demerit accounts of convicts who are under determinate sentences.
The new feature of this act is that providing for a parole of convicts.
It marks a new experiment in the management and discipline of prisoners, whether serving under fixed or indeterminate sentences. It is evidently prompted by a desire to reform, as well as to punish, to make better those under sentence, as well as to protect society.
It is declared that “ the board of managers shall, subject to the approval of the governor, make such rules and regulations for the government of the prisoners, as shall best promote their reformation.”
This legislation makes it the duty of the board of managers, while executing the penalties for crime to seek the improvement of the criminal. The paramount object is the welfare of society, hence the sentence to imprisonment of those convicted, and hence, also, the effort to educate and reform the convict so that he may, if possible, become a good member of society when he is released or his term expires.
Whether this legislation is wisely adapted to that end, or *647 whether it is practicable, it is not the province of this court to determine. It is conceded that the rules and regulations are such as the act authorizes, so the sole question is, is the act itself as amended, valid? Are the powers conferred an infringement of those conferred upon the executive or judicial depai’tmeuts ? The sovereign power of the state is vested in three departments — legislative, executive, and judicial. Whatever power is vested in either the executive or judicial departments can not be exercised by the legislative. What are legislative powers, or what executive or judicial powers is not defined or expressed in the constitution, except in general terms.
The boundry line between them is undefined, and often difficult to determine. May decisions are reported growing out of this general division of powers, and eminent writers upon constitutional law have endeavored to mark the line. To these sources we must refer without quoting.
It must suffice for our present purpose to say that it is among the admitted legislative powers to define crimes; to prescribe the mode of procedure for their punishment; to fix by law the kind and manner of punishment, and to provide such disciplinary regulations for prisoners, not in conflict with the fundamental law, as the legislature deems best.
In many instances the legislature fixes the penalty, as for instance in murder in the first and second degree, and this has never been regarded as an infiringement of the judicial power.
The law might fix a definite sentence for each crime without such infringement. The statute vests in the courts in some instances a discretion between a maximum and minimum penalty, or between alternative penalties, but this discretion might be taken away without infringing upon the exclusive power of the judiciary.
Revised Statutes, section 6799, authorizes and requires the court in sentencing a prisoner to declare for what period he shall be kept at hard labor, and for what in solitary confinement without labor, and in all eases of conviction the *648 defendant shall pay the cost of prosecution. The trial, verdict and sentence provided bylaw are judicial functions, yet no one doubts the power of the legislature as the representative of the state to mitigate the penalty by abolishing hard labor or solitary confinement, and substituting therefor a less severe form of executing the sentence. The manner in which the discipline of the prison shall be enforced must necessarily be left to the board of managers under appropriate legislation. Section 7330 of the Revised Statutes is relied on. It requires the sheriff to deliver the convict to the warden of the penetentiary, there to be safely kept until the term of his confinement expires, or he is pardoned. Emphasis is laid upon the word “there” as meaning within the walls of the penitentiary, and as part of the judicial sentence.
This is no part of the judicial act of the court, but as a duty imposed upon the sheriff and warden in the execution of the sentence. It does not interfere with the power of the legislature in case of flood, fire, or pestilence, or for other sufficient cause to establish prisons elsewhere, and transfer convicts thereto. Nor with power to extend the limits of the.penitentiary to any part of the state without its walls for the employment of the convicts. Thus the act of March 12, 1831 (3 Chase’s St. 2010), provided: “ See. 7. That the penitentiary is hereby declared to extend to any brick-yard or other place or places of employment of the convicts without the walls of the prison, at which such convicts may be employed by order of the directors.”
By act of February 11, 1832 (30 Ohio Local Laws, 294; Swan’s St.' of 1841, note to p. 257), it was provided (sec. 12), that the jail of Hamilton county should extend—
“ To any stone quarry or any quarries, road or roads, or other place or places within the limits of the county of Hamilton, at which the convicts may be advantageously employed without the walls of the prison.” •
This provision was extended to Cuyahoga county by act of February 16,1839 (37 Ohio Local Laws, 54; Swan’s St. of 1841, note to p. 259.)
The act of March 12,1845 (43 Ohio Laws, 79; 2 Curwen’s *649 Stat. 1139), contains the same provisions (sec. 3), but limited by section 4, to the counties of Montgomery, Muskingum, Meigs, Scioto, and Lake.
On January 13, 1846 (44 Ohio L. 9; 2 Curwen Stat. 1193), this limitation was repealed with a saving of Hamilton and Cuyahoga counties. Thus the jail extension was made applicable throughout the entire state, Hamilton and Cuyahoga counties being provided for by the special acts above referred to.
By the act of February 23, 1833 (Swan’s St. of 1841, 735), prison bounds were made eo-terminous with counties.
Revised Statutes, section 6801,’ makes county jails for the purpose of confining prisoners committed for non-payment of fines or costs, and convicts sentenced to hard labor in jail, extend “ throughout the county.” ,
“ The penitentiary,” as the term is used in the statute, does not mean the place, geographically limited, which, at the moment of the sentence, may be legally designated, or in use for the confinement of criminals. No such narrow limitation is admissible. The words refer to the place or places which, for the time being, the legislature may provide for the incarceration of criminals. Reed v. Fullum, 2 Pick. 158; Re Hartwell, 1 Lowell, 536; Walton v. State, 88 Ind. 9; Brown v. The People, 75 N. Y. 437.
If this be not so, then the laws for the transfer of prisoners from the penitentiary to the two industrial schools have reference only to those minors who were sentenced before their passage. Revised Statutes, sections, 761, 772.
And there will be no possibility of transfer to the proposed intermediate penitentiary, except perhaps of prisoners sentenced after its establishment.
Likewise deductions from imprisonment by way of rewards for good conduct can not apply to prisoners undergoing imprisonment at the passage of the acts permitting them, or between their repeal and re-enactment. Revised Statutes 7432, repealed March 24, 1884 (81 Ohio L. 77 — re-enacted April 14, 1884, 81 Ohio L. 187).
Nor will it be lawful to relax the severity of a'sentence to imprisonment at hard labor even in case of disability of *650 Bickness, or to modify the rigor of a sentence to solitary confinement.
Revised Statutes section 7427, provides that the board may modify the sentence of the court to solitary confinement when necessary to prevent serious injury to health, and section 7428 provides for a transfer of insane convicts to the Columbus^ insane asylum.
This legislation applies to convicts who becamé such before as well as after the passage of the act. It can not seriously be contended that this is an interference with the judicial functions of the court, but is rather the exercise of that guardianship and power of discipline, which is vested in the state, to be exercised through the legislative department, for the safe-keeping, proper punishment, and welfare of the prisoner. Neither is it an interference with the exclusive power vested in the governor to grant reprieves, commutations, and pardons. While on parol the convict remains “ in the legal custody and under the control of the board, and subject at anytime to be taken back within the inclosure of said institution, and with full power to enforce such rules and regulations, and to retake, and to re-imprison any convict so upon parole.” This is not. a pardon.
“ A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed.” United States v. Wilson, 7 Pet. 150.
A pardon discharges the individual designated from all or some specified penal consequences of his crime. It may be full or partial, absolute or conditional. Bouvier’s Law Dict., title, Pardon; 1 Bishop’s Cr. Law (6th ed.), sec. 914.
A full and absolute pardon releases the offender from the entire punishment prescribed- for his offense, and from all the disabilities consequent on his conviction. Ex parte Garland, 4 Wall. 380; State v. Foley, 15 Nev. 64; Commonmonwealth v. Bush, 2 Duv. (Ky.) 264.
Section 8 does not purport to discharge the prisoner or *651 shorten his term of service. It simply authorizes the board of managers to allow the prisoner to go outside the buildings and inclosures of the penitentiary, but he is to remain in their legal custody and under their control. Neither is it a commutation of the sentence; commutation is “ the change of a punishment to which a person has been condemned into a less severe one.” Bouvier Law Diet.
It is not a conditional pardon, but the substitution of a lower for a higher grade of punishment, and is presumed to be for the culprit’s benefit. Ex parte Victor, 31 Ohio St. 206.
Section 7 of the act under consideration provides for a system of credits whereby the term of sentence may be diminished. In Commonwealth v. Holloway, 42 Pa. St. 448, it was held that such legislation was not an interference with the pardoning power, for the reason that “ pardon operates directly on the crime and only indirectly on the criminal.” But it was further held by a divided court that such diminution of sentence, by reason of good conduct, was an interference with the judicial power, and therefore void. The reasoning of the majority is by no means satisfactory; it fails to distinguish between the judicial duties proper and those acts relating to the mode and manner of executing a sentence. The same question came before the supreme court of Massachusetts, 13 Gray, 618, where a like law as that in Pennsylvania was Upheld.
This court, in Ex parte Scott, 19 Ohio St. 581, held that “ giving to parties imprisoned for non-payment of fines the benefit of laws for the relief of insolvent debtors, and authorizing their discharge as such, is 'not an attempt to place the pardoning power in hands other than those of the governor of the state. It is merely a modification of penalties prescribed for certain offenses, and is not in conflict with the constitution.” Surely, nothing more can be said of the exercise of the powers of the board herein complained of.
It may be claimed that this act, so far as it affects past sentences, is retroactive, and therefore unconstitutional. This can not be, as by this provision the legislature is only *652 prevented from interfering witb tbe vested rights of individuals.
It does not hinder the state from divesting itself of any right of claim of its own. The only party who could object is the prisoner, and he can not, where it is clearly for his benefit. If the provisions of the law are not ex post facto in their nature, he cán not complain.
Whether, under this act and the regulations adopted by the board, a case might not possibly arise in which the personal rights of the prisoner would be infringed, it is impossible to say. Until such a case does arise we need not consider the question.
So far as the state has a right to inquire, we hold this legislation valid.

Writ refused.