ROBERT McCLERKIN, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. In order to convict a defendant of the crime of perjury, the offence must be proved by the oath of two witnesses, or by the oath of one witness and by other independent and corroborating circumstances which is deemed of equal weight with another witness.

2. After the jury retired to their room to consider of their verdict the Judge went home. Upon the return of the Judge the jury came into court to deliver their verdict. The Clerk was absent. The jurors were called and answered to their names, were then asked by the Judge if they had agreed upon their verdict, and having answered that they had so agreed, delivered the same in writing to the Judge. The Judge received the verdict and handed it to the Sheriff, and then adjourned the court until the following day. Before the Judge left the court room the Clerk came in, the Sheriff gave him the verdict of the jury and he recorded it in the minutes of the court: *Held*, not to be error ; the Clerk is only the official scribe of the court. He is to keep regular and fair minutes of all the proceedings of the court. The duty of signing the minutes so kept by the Clerk is imposed upon the Judge, and his signature alone gives them verity.

3. The Judge may keep his own minutes of the court by entering them himself, make his own adjournments, swear the witnesses, receive the verdict from the jury, and record or cause the same to be recorded in the minutes, which he subsequently verifies by his signature.

4. A motion in arrest of judgment arises from *intrinsic* causes appearing upon the face of the record. It is not the proper remedy for a wrong verdict, nor is it the proper remedy for an illegal admission of evidence. It does not and cannot take place and answer the purposes of a motion for a new trial.

Writ of Error to the Circuit Court for Leon county.

The facts of the case are stated in the opinion.

*S. D. McConnell* for Plaintiff in Error.

*The Attorney-General* for the State.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

On the 20th day of October, A. D. 1881, at a term of the Circuit Court of the Fifth Judicial Circuit held in and for the county of Marion, the grand jury found an indictment against the plaintiff in error, Robert McClerkin, for the crime of perjury. He was duly arraigned, plead not guilty, was tried and was found by the jury guilty. Counsel for the defendant then moved for a new trial upon the following grounds:

1st. Because the verdict of the jury was found upon the testimony of one witness, and not upon the testimony of two witnesses as is required by law.

2d. Because the verdict of the jury was contrary to the evidence and without evidence to sustain it.

3d. Because the court erred in receiving the verdict when neither the Clerk of the Court nor either of his deputies were present in court.

4th. Because when the jury rendered their verdict neither the clerk nor either of his deputies was present in court and the verdict was received by the court in the absence of the clerk and his deputies, and was by the court handed to the sheriff, and the court was thereupon adjourned, no clerk or deputy clerk being present at the time of such adjournment.

5th. Because the verdict is contrary to law.

This motion was overruled by the court and defendant's attorney excepted. The counsel then moved in arrest of judgment for similar reasons as are above assigned on motion for a new trial. This motion was also overruled and defendant's counsel took an exception. The court sentenced

the defendant to two years imprisonment in the State penitentiary. The case is in this court on writ of error.

The record discloses the following facts:

One Arthur Williams was arrested upon a warrant issued by Samuel F. Marshall, County Judge and *ex-officio* Justice of the Peace of Marion county, upon the charge of assault with a deadly weapon, with a premeditated design to effect the death of July Brown. On the examination before said County Judge it became necessary to prove what weapon was used in the commission of the assault. McClerkin, the defendant in this case, was subpoenaed as a witness against Williams, and he produced in court a certain hickory stick with which he testified Williams committed the assault upon Brown. Subsequently McClerkin was indicted for perjury, the indictment alleging that the stick so produced by him before the County Judge was not the stick with which Williams committed the assault. This is the perjury alleged. On the trial of this defendant upon the indictment, A. B. Crutchfield testified that he was the sheriff of Marion county; that Arthur Williams was arrested upon a warrant and had an examination before Judge Marshall; McClerkin was subpoenaed in that court to bring into court the stick with which Williams struck Brown; he came into court and produced this stick, (showing to the jury a hickory stick one inch in diameter with a knob on the end, of the same diameter, but not loaded,) and testified that it was the stick with which Williams struck Brown. The defendant, on that examination, was asked, " if this was the stick with which Arthur Williams struck July Brown when he assaulted the said July Brown, as charged in the warrant, and the answer was that it was."

July Brown testified: " I was present at the preliminary trial of Arthur Williams before Judge Marshall for assault upon me ; don't remember the date; defendant, McClerkin,

was a witness, he came into court with this stick, (the same referred to by Crutchfield) and said it was the stick with which Arthur Williams struck me; he was sworn; this is not the stick; the stick used by Williams was a supple, wrapped whalebone stick with a ball on the head, and belonged to the defendant, McClerkin; Williams snatched it from him and struck me on the head, holding the small end of the stick. The blow was a severe one; it knocked me senseless and fractured my skull, and it was dressed by Dr. Gary."

Amzia Vance testified that he was present at the examination before Judge Marshall; that on that examination McClerkin testified that this stick, (the one referred to by the last two witnesses) was the stick with which the assault was committed; " this is not the stick Williams struck Brown with—a palmetto stick—a supple stick which looked like this except it had a piece of lead tied on the end with a string; * * * the stick was same shape and nearly like this; could not have told the difference between the two without examining it."

Wilkes Hence testified that he was present when the assault was committed; that the assault was committed " with a loaded stick." I was present at Williams' preliminary examination and heard McClerkin testify; he said that Williams struck Brown with this stick (referring to the same stick as referred to by the other witnesses); this is not the stick with which Williams struck Brown; the only difference between this stick and the one used was that the stick with which the blow was given was a rattan supple stick and loaded."

This is the substance of the evidence as appears from the record. All of the witnesses testify that the hickory stick which McClerkin testified was the one used in the commission of the assault was not the stick so used. All three of

them say it was a loaded stick.  Upon this evidence the jury have found the defendant guilty, and they are made the judges of the credibility of the witnesses.  In Wharton's Criminal Law, §802, it is said: "It was formerly held that there must be two witnesses upon an indictment for perjury; that one alone is not sufficient, because there is in that case only one oath against another.  The strictness of this rule, however, has long since been greatly relaxed ; the true principle being that the evidence must be something more than sufficient to counterbalance the oath of the prisoner, and the legal presumption of his innocence."  Again in §804 it is said: "If the assignment of perjury be directly proved by one witness and strong circumstantial evidence be brought forward, such evidence will supply the want of another witness."

The same rule is laid down in 1 Greenleaf on Evidence, 13th Ed., §257; United States vs. Wood, 14 Peters, 436; Com. vs. Pollard, 12 Met., 225.

To convict of the crime of perjury, the offence must be proved by the oaths of two witnesses, or by the oath of one witness, and by other independent and corroborating circumstances, which is deemed of equal weight with another witness.  Such is the rule now, well established on authority.  We cannot say that there was error in the verdict of the jury.  This disposes of the first and second grounds upon which the motion for a new trial was asked.

The third and fourth grounds upon which the court were asked to grant a new trial are substantially the same.  The record upon this subject recites the following facts: " After the said jury had retired to their room and were considering of their verdict, his honor, the presiding judge, left the court-room, and went home to his supper.  And afterwards, upon the return of his honor, the presiding judge, into the court room the jury returned into court to

deliver their verdict, whereupon the clerk still being absent, the court orders him to be called by the sheriff, whereupon he was so called, but failed to answer, and the deputy clerk was likewise called, but failed to answer; whereupon the jurors being called, and all having answered to their names, were asked by the court if they had agreed upon a verdict, and having answered that they had so agreed, delivered to the presiding judge the following verdict: 'We, the jury, find the defendant guilty.' And the said presiding judge, having received the said verdict, as aforesaid, delivered the same to the sheriff and adjourned the court until the following day at half past nine o'clock A. M., there being no clerk or deputy present in court. After the court had adjourned, as aforesaid, but before the judge left the court-room, the deputy clerk came into court. The sheriff then handed the verdict of the jury to the said deputy, who, or the chief clerk, recorded it. The verdict so recorded is the same that was returned by the jury to the court, is the verdict on which the judgment of the court is founded."

No exception was taken to the action of the court in receiving the verdict from the jury, or in subsequently causing the same to be entered upon the minutes of the court. The verdict and judgment appear in the record to have been properly recorded. There is no statute in this State requiring the presence of the clerk at this or other particular steps in cases on trial before a jury, or making it essential to the reception of a verdict, or to give such verdict and the judgment thereon validity. It is his duty to keep " regular and fair minutes of all proceedings " of the court, but he is not required or authorized to sign them; that duty is imposed upon the judge, and his signature alone gives them verity. The clerk is only the official scribe of the court. He can administer oaths, so can his deputy, and so can the judge. He alone, under the statute,

can draw the grand and petit jury, and his duties generally are prescribed by statute. The Constitution of this State, Article 6, Section 6, provides that "such Judge (Circuit) shall hold two terms of his court in each county within his Circuit each year, at such times and places as shall be prescribed by law."

In Hobart vs. Hobart, 45 Iowa, 503, the court, speaking of what is required to be had in open court, says : " We are first charged with the task of determining the purport and effect of the words ' *open court.*' Blackstone, adopting Coke's definition, says : 'A court is a place wherein justice is judicially administered.' 3 Bl. Com., 24. But this definition obviously wants fullness ; it is limited to the *place* of a court in its expression. In addition to the place there must be the presence of the officers constituting the court, the judge or judges certainly, and probably the clerk authorized to record the action of the court ; time must be regarded, too, for the officers of a court must be present at the place, and at the time appointed by law in order to constitute a court. To give existence to a court then, its officers and the time and place of holding it, must be such as prescribed by law. The Circuit Court is to be held by the Circuit Judge, and its terms are prescribed by law. The places of holding it are also prescribed, and it cannot be held elsewhere. To constitute the Circuit Court, then, the Circuit Judge must be in the discharge of judicial duties, at the time and in the place prescribed by law for the sitting of the court."

In the case of Mealing vs. Price, 14 Geo., 596, 669, Judge Lumpkin, speaking for the court, upon the subject of courts, says : " Our opinion is that the exception itself " (to the legality of the court for want of a clerk) " is based upon a false assumption ; and that is, that the office of clerk is necessary to the existence of the court. While we

hold that he is a very proper officer to keep regular and fair minutes of all the proceedings of the court of which he is the clerk, as he is required to do by the 34th section of the judiciary act of 1799, still we are quite clear that the court can live and move and have its being without him, it can keep its own minutes by entering them itself, and signing them as is now done ; and make its own adjournment from day to day, or for a longer time, to suit its own and the public convenience, without a clerk. Nor is there anything in our statutes, which is repugnant to this conclusion. There are some things, *perhaps,* which the clerk alone can perform, but as to adjournments he has neither part nor lot in the matter." So we say the judge may receive the verdict from the jury, and record, or cause the same to be recorded in the minutes, which he subsequently verifies by his signature. We cannot see, in the light of the facts, as they appear in the record, the Constitution of the State, and the statutes, that the court committed any error in receiving, or in causing the verdict in this case to be recorded. There was, in the absence of any objection or exception upon the part of the defendant, an implied consent that the verdict should be received, and the jury not unnecessarily detained. The verdict, after it was received by the court, was subject to the judgment and control of the court. Wathan vs. Penebaker, 3 Bibb, 99.

The assignment of errors filed in this cause, contains what is claimed to be the third error, in those words : "The court, in refusing to grant the motion in arrest of judgment made by the appellant in said cause."

The motion in arrest of judgment was based substantially upon the same grounds upon which the motion for a new trial had been made and overruled. No defect was alleged in the indictment or in any of the subsequent pleadings. " Motions in arrest of judgment arise from *intrinsic*

causes, appearing upon the face of the record." Sedgwick vs. Dawkins, 18 Fla., 335 ; Hyer vs. Vaughn, 18 Fla., 647.

" A motion in arrest of judgment is not the proper remedy for a wrong verdict. The remedy is not a motion to have the judgment arrested, but a motion to have the verdict set aside and a new trial granted. Nor is a motion in arrest of judgment the proper remedy for an illegal admission of evidence." State vs. Snow, 74 Me., 354.

The court committed no error in either overruling the motion for a new trial, or the motion in arrest of judgment.

The judgment is affirmed.