BUCK HALL, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Under Section 2388, Revised Statutes, it is *imperatively necessary* that the jury, when they find the defendant guilty under an indictment for murder *shall* ascertain and *declare by their verdict* the *degree* of unlawful homicide of which they find him guilty. In such a case a verdict that simply says: "*We, the jury, find the defendant guilty*," or, "*guilty as charged in the indictment*," is a nullity, and no judgment or sentence can legally be pronounced thereon.

2. The following rule from 1 Greenleaf on Evidence, Section 111, approvingly cited : "Every one who does enter into a common purpose or design is equally deemed in law a party to every act which may afterwards be done by any of the others, in furtherance of such common design. Sometimes, for the sake of convenience, the acts or declarations of one are admitted in evidence before sufficient proof is given of the conspiracy, the prosecutor undertaking to furnish such proof in a subsequent state of the cause. But this rests in the discretion of the judge, and is not permitted except under particular and urgent circumstances."

Writ of error to the Circuit Court for Jackson county.

The facts in the case are stated in the opinion of the court.

*R. H. Walker*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

TAYLOR, J.:

The plaintiff in error, Buck Hall, at the Spring term, A. D. 1892, of the Circuit Court for Jackson county, was jointly indicted with Sebe Espy, Choice Adams and Henry Simmons for the murder of John R. Ely, Jr., on the 9th day of December, 1891.

The indictment contains two counts, the first charging all four of the defendants with the murder of the deceased; the second charging the defendants Hall and Espy with the commission of the murder, and charging Adams and Simmons as being present, counselling,

12

aiding and abetting the other two therein. On the 13th day of June, A. D. 1892, the day upon which our Revised Statutes went into effect, an order of severance of trial was made as to the defendants Adams and Simmons, and on that day the trial of the plaintiff in error, Buck Hall, alone, was begun, the defendant Sebe Espy not being in custody.

The trial resulted on June 17th, 1892, in the following verdict: "We the jury find the defendant Buck Hall guilty."

Upon this verdict, after the denial of a motion for a new trial, the defendant was sentenced to death, and from such sentence comes here by writ of error.

The 13th ground of the defendant's motion for a new trial was as follows :

" Because the jury in this case found defendant guilty under an indictment for murder, and they failed, as required by Section 2383 of the Revised Statutes, to ascertain by their verdict the degree of unlawful homicide of which he was guilty."

The 8th assignment of error is the overruling of the motion for new trial; and the 9th assignment of error is the rendition of the judgment or sentence by the court on the verdict of the jury which fails to ascertain the degree of unlawful homicide of which the defendant was guilty.

Incorporated in our Revised Statutes as Section 2383 thereof is the following provision : "When the jury find the defendant guilty under an indictment for mur-

der, they shall ascertain by their verdict the degree of unlawful homicide of which he is guilty, but if the defendant on arraignment confesses his guilt, the court shall proceed to determine the degree upon. an examination of the testimony and pass sentence accord ingly."

This provision of law, that seems for many years to have been embodied in the criminal codes of many of the other states, is an entirely new one with us, appearing on our statute book for the first time as part of the lately adopted Revised Statutes.   It went into effect and became the law of this State, as before stated, on the very day that the plaintiff in error was put upon his trial, and therefore became and was applicable to the proceedings in that trial.   Because of the gravity of the case, and of the fact that the question here raised comes before us now for the first time in this State, we have given it the most thorough research and consideration; and we have been unable to find a single decision of any state having a similar statutory provision with reference to verdicts in murder cases, that does not hold, that a verdict, such as the one rendered in this case, in the presence of such statutory requirement, is a nullity, and that no judgment or sentence can legally be pronounced thereon.   So far as we have been able to ascertain, Pennsylvania as early as 1794 was the first state to adopt such a provision, and did so in the following language: "The jury before whom any person shall be tried shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree."   In com-

menting upon the province of the jury under this statute, Chief Justice Thompson of the Supreme Court of Pennsylvania, in Lane vs. Commonwealth, 59 Penn. St., 371, says: "It must admitted, we think, that the act makes no distinction as to the requirement to find the degree of murder, between any of the modes by which it may be perpetrated, as defined in the statute. In all alike the requirement applies without any exception. Even in case of a confession of the crime and submission to the court, no matter by what means it may have been perpetrated, whether by poison, lying in wait, or in an attempt to commit either of the enumerated crimes, in which intention to kill is not a material inquiry, the court must, before sentencing, examine witnesses and determine the degree. The law is imperative, and it is indispensable in the trial of a homicide, that the degree of the crime be ascertained and appear on the record. This is to be done by the jury, where there is a trial, and by the court, where there is a sentence on a confession. It is as essential an element of the verdict as any other fact found by it. It is this which ascertains and fixes the penalty to be attached to the crime, and hence it must appear by the record."

The state of Maryland in 1809 adopted the Pennsylvania statute in the following language: "The jury before whom any person is indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder in the first or second degree; but if such person be convicted

by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly. In the case of Ford vs. State, 12 Md., 514, where the verdict was simply "Guilty," LeGrand, Chief Justice, delivering the opinion of the Supreme Court of Maryland, says: "In most of the states of this Union the act of Pennsylvania has been adopted in its very words; and we are not aware of any decision, in any of the courts of last resort, where it has been held not to be incumbent on the jury to find, distinctly and unequivocally, the degree of the murder. So far from it, there has been an unbroken uniformity of decision to the contrary. We do not deem it essential to recapitulate the numerous cases in which the act has come under review. It is palpable to us that the true intent and purpose of the act, in this particular, were to impose upon the consciences of the jury the finding *in their verdict* (not therefrom to be inferred or conjectured) the degree of the crime; and when that part of the act is considered which refers to the case of the accused making, in open court, a confession of guilt, it seems to us next to impossible that, on reflection, there should be any doubt on the mind of any one as to the proper interpretation of it. In the case of the confession by the prisoner, it is the duty of the judge to examine witnesses, with the view of determining the degree of the crime, the commission of which is confessed. Most certainly the accused's own confession of 'guilty' ought to be equally as strong against him as the finding of the jury of 'guilty.' And yet it does not dispense with the examination to

fix the degree.    To state the point, is, in our judgment, to resolve the question involved in it.    In the eye of the law there has been no valid and sufficient verdict; and, as a consequence, there must be a new trial.''

In the case of McCauly vs. United States, decided in 1846 by the Territorial Supreme Court of Iowa, 1 Morris, (Iowa), 486, the defendant, on a trial for murder, after all the testimony on the part of the prosecution had been adduced before the court and jury, withdrew his plea of not guilty and pleaded guilty to the indictment, and was thereupon sentenced to be hung. The court, per Mason, Chief Justice, in construing a similar statute to ours, says: "Nothing appears on the record showing that witnesses were examined by the court after he had pleaded guilty, or that the court in any manner decided whether the offense were murder or manslaughter as contemplated by the statute.    Had the trial before the jury proceeded, and a general verdict of guilty alone been rendered, it would have been clearly defective.    The general plea of guilty stands in the place of such a general verdict, and was so intended by the Legislature.    The law seems to regard manslaughter as a species of murder.    On an indictment for the higher offense, a conviction may take place for the lower; neither a general verdict or a general plea of guilty is permitted where murder alone is charged in the indictment, but an enquiry and decision as to the more precise nature of the offense are rendered necessary.    That enquiry and decision should appear of record.''    Because of the failure of the judge to exam-

ine witnesses *after the entry of the plea of guilty* and to decide as to the *degree* of the crime, the sentence in the last case quoted was reversed and a new trial awarded, notwithstanding the fact that the same judge, *prior* to the entry of the plea of guilty, had heard the entire evidence for the prosecution. We cite this case as an illustration of the strictness with which the provisions of such indictments have been required to be complied with.

In 1846 the state of Connecticut adopted the Pennsylvania law in almost the exact language of the Maryland statute quoted from above. And in the case of The State of Connecticut vs. Dowd, 19 Conn., 388, the Supreme Court of that state, in commenting on it, say: "That in all cases, the degree of criminality must be determined as a question of fact; and that a general conviction upon any indictment, without such determination, would not authorize a court to impose the greater punishment."

In 1835 the state of Ohio adopted the same provision of law substantially as it is contained in our own Revised Statutes (Section 39, Chapter 35, Swan's Statutes of Ohio, Compilation of 1841.) The Supreme Court of that state, in Dick vs. State, 3 Ohio St., 89, where the indictment contained three counts each charging the crime of murder in the first degree, and where the verdict of the jury was: " *That the defendant is guilty in manner and form as he stands charged in said indictment,*"

construing this statute, say: "The degree of the homicide is a *fact*, which the statute requires to be *specially* found. On an issue to a jury, it is requisite that the jury should *ascertain* or *find* this fact in their verdict; and in case of a plea of guilty, the court is required to determine this question of fact, from the examination of witnesses in open court. The true object of this statutory provision must be apparent. As an indictment for murder in the first degree embraces each of the three degrees of criminal homicide, of either of which the accused may be convicted; and as the issue which the jury is sworn to try, involves a charge of each of these three crimes, on a general verdict of guilty, which does not ascertain the degree of the homicide, the court could render no valid judgment, not knowing, from the verdict, for what degree of crime the judgment should be rendered. Hence, the statute has very properly provided, that the degree of the crime shall be found *from the evidence*, and ascertained or specified in the verdict." The verdict in the case last quoted was held to be a nullity and the judgment of conviction thereon was reversed and a new trial ordered. The same doctrine was reiterated by the same court in Parks vs. State, 3 Ohio St., 101.

In Alabama prior to 1849 the same statutory provision was adopted with this difference, that in case of confession of guilt a jury had to be empanelled to ascertain the *degree* of the crime. The Supreme Court of that state, in the case of Cobia vs. State, 16 Ala.,

781, where the indictment charged murder in the first degree in strict compliance with the rules of the common law, and where the verdict of the jury was: "Guilty in manner and form as charged in the indictment," in passing on the sufficiency of the verdict under the statute, say: "We think it very clear that the verdict of the jury does not warrant the sentence pronounced by the court. The verdict finds the accused guilty in manner and form as charged in the indictment. So if the defendant had pleaded guilty, or confessed his guilt, the record would only have shown that the prisoner was guilty of murder as charged, but in what degree would have been left uncertain. In the latter case, however, the court could not have pronounced judgment, but it would have been necessary to empanel a jury to ascertain whether he was guilty of murder in the first or second degree, before sentence could have been pronounced against the prisoner. If the court can not pronounce sentence against the prisoner on his plea of guilty as charged in the indictment, we do not see how sentence can be pronounced on a verdict of guilty as charged. The verdict only finds the facts charged to be true; the confession of guilt would equally ascertain the same facts to be true; but whether the acccused was guilty in the first or second degree would be left equally uncertain, whether he was found guilty by a jury, or confessed his guilt at the bar of the court. In either case, before the court can pronounce judgment, it must be ascertained by the verdict of a jury whether he be guilty in the first or second degree." The same ruling has been adhered to by the Supreme

Court of that state ever since, and has been reiterated in the following cases: Johnson vs. State, 17 Ala., 618;. Hall vs. State, 40 Ala., 698; Robertson vs. State, 42 *Id.*, 509; Kendall vs. State, 65 *Id.*, 492; Storey vs. State, 71 *Id.*, 329.

Besides the states from whose decisions we have already quoted, the same, or substantially the same statutory provision, prevails in the states of Arkansas, California, Kansas, Michigan, Missouri, Nevada, Tennessee and Texas, and the Supreme Courts of all those states, without a dissentient voice, have all passed upon this question in one and the same way, as will be found upon an examination of the following cases: Thompson vs. State, 26 Ark., 323; Allen vs. State, *Id.*, 333; People vs. Marquis, 15 Cal., 38; People vs. Campbell, 40.Cal., 129; State vs. Reddick, 7 Kan., 143; Tully vs. People, 6 Mich., 273; McGee vs. State, 8 Mo., 495; State vs. Upton, 20 Mo., 397; State vs. Rover, 10 Nev., 388; Kirby vs. State, 7 Yerg. (Tenn.), 258; McPherson vs. State, 9 Yerg. (Tenn.), 279; Isbell vs. State, 31 Tex., 138.

Under our statute the crime of murder is divided into three degrees, the lines of demarkation between them being dependent upon the manner and intent with which they are committed, and this of course must be deduced from the facts and circumstances of each particular case. Under our statute also we have the crime of manslaughter that may be perpetrated, as defined by our statute, in divers ways, dependent wholly upon the facts and circumstances of each particular case. It is also well settled here that under an indictment charg-

ing murder in the first degree in terms only, the ac-
cused may be convicted of either of the lesser degrees
of the same crime, or of manslaughter; Pottsdamer vs.
State, 17 Fla., 895. When, therefore a party indicted
in terms for murder in the first degree only, may, under
such indictment, be convicted of three other distinct but
lesser crimes; and when the crime *charged* and the
three lesser ones included therein, are dependent, for
their *distinctiveness*, upon the facts and circumstances
adduced in proof in each particular case, it seems to be
clear that the intention of this legislation was to re-
quire the jury *in their verdict* to specifically *ascertain*,
*find* and *declare what degree* of crime has been made
out by the proofs before them as a matter of *fact*.
And, in case of a confession of guilt in open court, the
judge must also ascertain and declare from the facts
and circumstances what *degree* of the crime charged has
been committed, and he can only do this by an exami-
nation of witnesses. As is so forcibly reasoned in the
authorities quoted, a *verdict* of "*guilty*," or, "*guilty as
charged*," certainly can not have any more potency as
an *indicator* of the specific *degree* of the crime that has
been committed, and for which the appropriate penalty
must be inflicted, than the prisoner's own confession
when he comes into court and says: "I am guilty of
the crime *as charged in the indictment*." And yet the
same statute, in the latter case, makes it imperative
upon the judge to examine witnesses and *from the
proofs* to ascertain the degree of the crime and to in-
flict the penalty therefor *as he finds it to be from these
proofs*, and not from the defendant's confession. The

verdict herein rendered, under the terms of this statute, was a nullity, and no judgment or sentence could, legally, be pronounced thereon.

What has been said disposes of the case, but as our conclusions will result in another trial of the cause, we will proceed to notice such of the other assignments of error as we think essential from the facts disclosed in the record.

The second error assigned is the admission by the court of declarations and transactions that passed between other parties apparently implicated in the murder of the deceased made prior to the killing, while the defendant was not present. That there was a conspiracy to kill the deceased on the part of some of the parties present at the killing, there is strong evidence in the record to support, but whether the defendant was a party to such conspiracy we do not undertake to say, though there is some evidence in the record that tends to implicate him therein. The rule governing the question raised by this objection is thus clearly stated in 1 Greenleaf's Evidence, Section 111 : "Every one who does enter into a common purpose or design" (referring to conspiracy) "is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others, in furtherance of such common design. Sometimes for the sake of convenience the *acts or declarations of one are admitted in evidence before sufficient proof is given of the conspiracy*, the

prosecutor undertaking to furnish such proof in a subsequent state of the cause. But this rests in the discretion of the judge, and is not permitted except under particular and urgent circumstances." Under this rule we do not think there was any error in the admission of the prior transactions and declarations of the other parties present at the homicide, done and made in furtherance of the act, at a time or times when the defendant was not present. We think the character of the proofs developed in the case, consisting as they did, largely of circumstantial evidence as well as direct proofs, brought the case strictly within the provisions of the rule above quoted, where the discretion of the judge, guided by the developments from the proof, should be allowed to govern the order in which the proofs are put in. The ordinary rule being that proofs of the existence of a conspiracy and the connection of the defendant therewith must precede the introduction of prior acts and declarations of other parties to the conspiracy, made when the defendant was not present; but the latter rule is sometimes and under particular circumstances, subject to the modifications as laid down in the quotation from Greenleaf above; and, as before stated, we think the proof developed this case to be an exception to the general rule. Lamar vs. State, 63 Miss., 265; State vs. Jackson, 82 N. C., 565.

There is nothing in any of the other assignments of error that we deem it necessary to consider, *except*, that in the charge given upon "reasonable doubt," we think, upon another trial, that the following words

should be omitted therefrom, *viz:* "*one which would satisfy a reasonable mind.*" We can not well see how a mind laboring under a *doubt* upon any subject, can be said to be in a "satisfied" state. The very essence of the doubt existing in the mind being its *unsatisfied* state; its *inability* to come to a satisfactory conclusion, upon the subject involved, freed from the persistent presence of that of which we speak of as *doubt.*

Because of the defect in the verdict of the jury, the judgment of the court below is reversed and a new trial is ordered.