GEORGE REYNOLDS, ET AL., PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. On a trial for a homicide committed on December 24th, 1891, the judge charged the jury that there were no degrees of manslaughter. This was error, as the provision of the Revised Statutes, §2384, defining and prescribing the punishment for manslaughter, has no application to offenses committed before the day such statutes took effect, *viz:* June 13th, 1892.

2. The transcript of the bill of exceptions found to be so interlined and in such a condition that the court is unwilling to recognize it for the purpose of considering rulings of the trial judge as to testimony.

3. Affidavits used at *nisi prius* on a motion for a new trial can not be considered by the appellate court unless they are incorporated into a bill of exceptions.

4. The fact that one of twelve grand jurors who concurred in finding an indictment under the act of June 6th, 1891, was not a competent grand juror, is waived by not pleading such fact in abatement. It can not be taken advantage of by motion in arrest of judgment supported by affidavit.

Writ of error to the Circuit Court for Baker county.

The facts in the case are stated in the opinion of the court.

*F. W. Pope* and *W. P. Ward* for Plaintiffs in Error.

*The Attorney-General* for Defendant in Error.

RANEY, C. J. :

George Reynolds, James Reynolds, Jesse Greek and Willis Hodges were indicted at the Spring term, 1893, of Baker county Circuit Court for the murder of James

Sweat, on the 24th day of December, 1891, George Reynolds being charged as principal in the first degree, and the others as principals in the second degree. The State having severed as to Hodges, the other defendants were put on trial before a jury and the verdict returned was that they were "guilty of manslaughter," and motions in arrest of judgment and for a new trial having been refused, the Circuit Court sentenced the prisoners to imprisonment in the State prison at hard labor as follows: George Reynolds for four years, and James Reynolds and Jesse Greek each for two years.

Among other charges given and excepted to, and now urged as ground for a reversal, was the following: "There are no degrees of manslaughter." In view of the time at which the killing is shown by the evidence to have been done, December 24th, 1891, this charge was erroneous and should not have been given. It is true that since the time that the Revised Statutes became operative, which was June 13th, 1892, there have been no degrees of manslaughter in Florida, but from August 6th, 1868, up to the day just mentioned, there were four degrees of manslaughter, punishable as follows: The first degree by imprisonment in the State penitentiary for a term of not less than seven years; the second degree for not more than seven nor less than four years; the third degree for not more than four nor less than two years; the fourth degree by imprisonment in the State penitentiary for two years, or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment. The punishment prescribed by the Revised Statutes for manslaughter, as this offense is now generally defined, as well as for the acts specially declared to be man-

slaughter, is imprisonment in the State prison not exceeding twenty years, or imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousand dollars.    Section 2384.

Manslaughter, as defined by the section of the revision just mentioned, is the killing of a human being by the act, procurement or culpable negligence or another, in cases where such killing shall not be justifiable or excusable homicide, nor murder.    There are also some special cases of homicide which are declared to be manslaughter.    Sections 2385-2392, Rev. Stats. Changes have been made as to murder as will appear from Marshall vs. State, 32 Fla., 462, 14 South. Rep., 92, and the statutes there referred to.    The definitions of the several degrees of manslaughter as they existed prior to the revision are to be found in McClellan's Digest, pp. 351-353, and on the first of these pages, prior to making such subdivision, the killing of one human being by the act, procurement, or omission of another is, in effect, declared to be manslaughter when it is neither justifiable, nor excusable homicide, nor murder, which three grades of homicide are also defined in the same chapter, pp. 350, 351, 353, 354.

It is provided by Section 2353 Rev. Stats., that no offense committed, and no penalty and forfeiture incurred prior to the taking effect of these Revised Statutes shall be effected thereby, and no prosecution had or commenced shall be abated thereby, except that when any punishment, forfeiture or penalty shall have been mitigated by the provisions of these Revised Statutes, such provisions shall apply to and control any judgment or sentence to be pronounced, and all prosecutions shall be conducted according to the provisions of law in force at the time of such further prosecution and trial applicable to the case.    In our judg-

ment the criminal law defining the different grades of
unlawful homicide, including that as to manslaughter,
that was in force here on the 24th day of December,
1891, is the law by which the guilt of the accused
was to be ascertained, and, in view at least of the dif-
ferent grades of manslaughter and their definitions,
the same is true as to the punishment to be inflicted.
In Mathis vs. State, 31 Fla., 291, 12 South. Rep., 681,
we held that the right to peremptorily challenge ju-
rors appertains to the remedy or procedure under
which prosecutions are conducted, and was not of the
essence of the offense itself, and that the Legislature
could at any time change the law as to any such mat-
ter and make it, as changed, apply to the prosecution
of previous offenses, as well as to those of subsequent
occurrence; and that in doing so there was no violation
of the provision of Section 32 of Article III of the
Constitution, that "the repeal or amendment of any
criminal statute shall not affect the prosecution or
punishment of any crime committed before such repeal
or amendment." The same principle was properly
enforced also in the cases of Hall vs. State, 31 Fla.,
176, 12 South. Rep., 449; Lovett vs. State, 31 Fla., 164,
12 South. Rep., 452; Murphy vs. State, 31 Fla., 166,
12 South. Rep., 453, where Section 2883 Rev. Stats.,
which requires that the verdict under an indictment
for murder shall specify the degree of unlawful homi-
cide of which the accused may be found guilty, was
not complied with. In Brown vs. State, 31, Fla., 207,
12 South. Rep., 640, the decision was that offenses
committed prior to the time that the Revised Statutes
became operative, remain offenses under the statutes
which punished them at the time of their commission,
and that such was the express purpose of Section 2353
Rev. Stats. In Blue vs. State, 32 Fla., 53, 13 South.

Rep., 637, an act of 1885 punished the offense of carrying arms secretly by imprisonment not exceeding six months, or by fine not exceeding one hundred dollars. The Circuit Court of any county, where there was no Criminal Court of Record or County Court, had exclusive jurisdiction of all violations of the act. An act of 1893 amended the act of 1885 by making the punishment imprisonment not exceeding three months, of fine not exceeding one hundred dollars, or both such fine and imprisonment; and it was held that the effect of this amendment was to give justices of the peace, in any county where there was no such Criminal or County Court, trial jurisdiction of all violations of the statute occurring subsequently to the amendatory act, but that the exclusive jurisdiction of all offenses committed prior to the amendment remained in the Circuit Court by virtue of the provision of the Constitution given above. In the opinion it is said, that the old statute stands, under Section 32 of Article III of the Constitution, as to offendings under it, and of course the Circuit Court retains its jurisdiction, there being no express or implied abrogation of its jurisdiction, nor any grant of jurisdiction to justices of the peace, or to any other tribunal, of such former cases.

The plaintiffs in error are triable under the law that defined the criminal character of any homicide which they may have committed on the night before Christmas, 1891, and there being no legislation mitigating the punishment prescribed by that law it, as in Brown vs. State, *supra*, is unnecessary to decide whether the constitutional provision mentioned precludes any such mitigation.

20

II. As to all grounds of motion for a new trial based upon rulings as to testimony, we are constrained to say that the bill of exceptions is so interlined and in such condition that we are unwilling to recognize it as proper evidence of what testimony was adduced on the trial. We can not establish such a precedent. Without noticing other errors to the consideration of which a bill of exceptions is necessary, we will observe that affidavits used at *nisi prius* on a motion for a new trial can not be considered by the appellate court unless they are incorporated into a bill of exceptions; and further, that it is not to be anticipated that any whiskey will reach the jury on the next trial, or that the jury will use the Revised Statutes or any other law books. Johnson vs. State, 27 Fla., 245, 9 South. Rep., 208.

III. The ground of the motion in arrest of judgment as entered in the trial court is that the indictment on which the defendants were tried and convicted is defective and void, in that it was found by a grand jury consisting of only twelve men, and of which the assent of only eight was required to find an indictment. In English vs. State, 31 Fla., 340, 356, 12 South. Rep., 689, and Donald vs. State, 31 Fla., 255, 12 South Rep., 695, the statute of June 6th, 1891, under which this indictment was found, was considered, and in so far as it provided that a grand jury should consist of twelve members, was held to be operative and separable from the void clause as to eight members being sufficient to find an indictment. It will be observed that the motion does not go to the extent of asserting that less than twelve concurred in the finding now under consideration; yet if it did, the fact that less than twelve concurred in the finding could, in the absence of an affirmative showing to that effect in the return of the

finding, be taken advantage of only by plea in abatement. Kitrol vs. State, 9 Fla., 9; Gladden vs. State, 13 Fla., 623, 630; Burroughs vs. State, 17 Fla., 643; Ellis vs. State, 25 Fla., 702, 6 South. Rep., 768; *Ex parte* Warris, 28 Fla., 371, 9 South. Rep., 718; Donald vs. State, 31 Fla., 255, 262, 12 South. Rep., 695, 697. It is argued before us that it was brought to the attention of the trial court, by affidavits, that one of the grand jurors was related to the deceased within the prohibited degrees, and that consequently the indictment was found by less than twelve legal grand jurors. Any such alleged defect in the grand jury was waived by not pleading it in abatement of the indictment. The authorities cited, 1 Bishop's Crim. Pro., sec. 854. and People vs. Roberts, 6 Cal., 214, do not sustain the idea that a defect reaching so far as not to leave the legality of twelve of the grand jury unquestioned need not be taken by plea in abatement, nor can we discover any good reason for the distinction. Of course motions in arrest of judgment go only to defects in the record proper, and not to matters *in pais* presented by merely affidavit, nor to any matter, whose consideration by an appellate court it is the sole office of a bill of exceptions to secure. Lovett vs. State, 29 Fla., 356, 11 South. Rep., 172; Brown vs. State, 29 Fla., 543, 10 South. Rep., 736; Jordan vs. State, 22 Fla., 528; McClerkin vs. State. 20 Fla., 879; Sedgwick vs. Dawkins, 18 Fla., 355; Hyer vs. Vaughn, 18 Fla., 647.

The judgment is reversed, and a new trial granted.