Raines v. State.—Syllabus.

---

WESLEY RAINES, PLAINTIFF IN ERROR VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Appellate Practice—Motion to Quash Indictment
   Part of Record Proper—Effect of Repeal of Criminal Statute
   on Crimes Committed—Proof of Larceny of all the Property
   as Charged not Necessary to Conviction.
1. Under the rule announced in Barnes Ex'r. vs. Scott, Adm'r.,
   29 Fla., 285, 11 South. Rep. 48, a motion to quash an indict-
   ment in a criminal case, and the ruling of the court thereon,
   for the purpose of appellate review, form part of the record
   proper in the case, and are out of place in a bill of exceptions.

2.    Section 32 of Article III of the Constitution of 1885 provides
that "the repeal or amendment of any criminal statute shall
not affect the prosecution or punishment of any crime com-
mitted before such repeal or amendment." The effect of this
constitutional provision is to give to all criminal legislation a
*prospective* effectiveness; that is to say, the repeal or amend-
ment, by subsequent legislation, of a pre-existing criminal
statute does not become effective, either as a repeal or as an
amendment of such pre-existing statute *in so far as offenses are
concerned that have been already committed prior to the taking
effect* of such repealing or amending law. And a crime com-
mitted prior to the taking effect of a statute that amends or
repeals the law violated by the commission of such crime
stands for prosecution and punishment under the law that it
violated at the time of its commission, notwithstanding the sub-
sequent repeal or amendment of such law.
3.    It is not necessary to a conviction for larceny that all of the
property as charged shall be proven to have been stolen.


Writ of error to the Circuit Court for Jackson
county.

The facts in the case are stated in the opinion of the
court.

*Calhoun & Farley*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

Taylor, C. J.:

The plaintiff in error was indicted on the 5th day of
June, 1899, in the Circuit Court of Jackson county for
the larceny of five hogs, and was tried and convicted in
said Circuit Court in November, 1899, and sentenced to
two years' imprisonment in the penitentiary, and seeks
reversal of such judgment by writ of error.

Before arraignment the defendant moved to quash
the indictment upon the following grounds:

Raines v. State.—Opinion of Court.

1st. Because the act of the legislature under which this indictment was found has since been repealed.

2nd. Because the offence charged in said indictment is a misdemeanor, and this court has no original jurisdiction of the offence.

3rd. Because said indictment does not allege that the act of taking the hogs was the second offense committed by this defendant, so as to give this court jurisdiction.

4th. Because there is no statutory law in force at present under which this court could sentence the defendant should he be found guilty.

5th. The offence charged comes originally in the jurisdiction of the justice of the peace court. This motion was denied, the ruling excepted to and it is assigned as error.

Preliminary to the discussion of the question raised by this assignment, it is contended by the Attorney-General that this court can not properly consider it, because the motion itself and the ruling of the Circuit Court thereon and the defendant's exception to such ruling are not properly evidenced to us in and by a bill of exceptions, but appear in the transcript only in the record proper. This contention is untenable. In the case of Barnes Ex'r. v. Scott, Adm'r., 29 Fla. 285, 11 South. Rep. 48, this court has held that where a question is directly raised to the court to respond to it, as upon a demurrer, or a motion founded upon matters in the record, which shows the matter and the decision of the court thereon, no bill of exceptions is necessary; and no objection is required to be made to the decision of the court upon any matter predicated upon matter of record directly submitted to the court for its decision, and that specially called for such decision. * * *

For where the facts already appear in the record, and
the court, by a demurrer, or a proper motion founded
thereon, is called   upon for the proper   decision, the
court is bound to decide the question according to law,
* * *  for in such a case there is palpable error appar-
ent on the record, in case the question is decided wrong.
A motion to quash an indictment is so similar to a de-
murrer to such indictment in its effect that the same rule
for the incorporation into a record for   appellate   re-
view of the ruling upon a demurrer will apply to such a
motion.   Such a motion forms part of the record proper
in the case and it would be out of place in a bill of ex-
ceptions.   Laycock v. State, 136 Ind. 217, 36 N. E. Rep.
137; Baker v. People, 105 Ill. 452; State v. Judy, 60
Ind. 138; State v. Day, 52 Ind. 483.

The law in force at the time the indictment in this
case was found, and at the time of the commission of the
offence charged, prescribed imprisonment in the peni-
tentiary as the penalty for the larceny of hogs, which
fact   made   the crime a felony, of which   the Circuit
Courts, in counties where there are no criminal courts
of record, alone had jurisdiction to try.   Subseqeuntly to
the commission of the offence, and subsequently to the
presentment of the indictment charging same, but be-
fore the trial and conviction thereunder, Chapter 4728
laws, approved May 29th, 1899, went into effect, which
Chapter repeals all laws in conflict therewith, and pre-
scribes imprisonment in the county jail not exceeding
six months or a fine not to exceed one hundred dollars,
or both such fine and imprisonment, as the maximum.
penalty for a single crime of hog   stealing, thereby
changing the crime   from a felony to a misdemeanor.
Section 25, Article XVI Constitution   of 1885.   And
Chapter 4729, approved May 11th, 1899. gives to jus-

Raines v. State.—Opinion of Court.

tices of the peace jurisdiction to try all misdemeanors punishable by fine not exceeding five hundred dollars, or by imprisonment not exceeding six months, or by both such fine and imprisonment. Upon these two latter acts the defendant's motion to quash the indictment is predicated. The contention being that these two acts repeal the former law in force at the time of the commission of the offence, under which the indictment was found, and take away the jurisdiction of the Circuit Courts to try the same, placing such jurisdiction with justices of the peace. This contention is proper when applied to offences *committed subsequently* to the time when the said Chapter 4728, approved May 29th, 1899, went into effect as a law, but section 32 of Article III of our Constitution: "The repeal or amendment of any criminal statute shall not affect the prosecution or punishment of any crime committed before such repeal or amendment," prevents the said Chapter 4728 from affecting either the prosecution or the prior prescribed *penalties* for any crime committed prior to the taking effect of such *ex post facto* law. The effect of this constitutional provision is to give to all criminal legislation a *prospective* effectiveness; that is to say, the repeal or amendment, by subsequent legislation, of a pre-existing criminal statute does not become effective, either as a repeal or as an amendment of such pre-existing statute *in so far as offences are concerned that have been already committed prior to the taking effect* of such repealing or amending law. The crime of which the defendant was convicted in this case was committed prior to the taking effect of said Chapter 4728, and such crime, therefore, stood for prosecution and punishment under the terms of the law that it violated at the time of its commission, notwithstanding the subsequent repeal or amendment

of such law. And inasmuch as the law under which this particular crime had to be prosecuted and punished made it a *felony*, over which, under the constitution, the Circuit Courts, in counties where there is no Criminal Court of Record, alone have jurisdiction, the Circuit Court was the proper form in which to try it. The said Chapter 4728 does not in express terms undertake to apply its lessoned or mitigated penalties to cases of hog stealing that had already been committed prior to its enactment, therefore it is unnecessary and improper for us in this case to adjudge whether or not the quoted provision of our constitution would prevent *ex post facto* legislation expressly mitigating the prior prescribed penalties for past offences. Blue v. State, 32 Fla. 53, 13 South. Rep. 637; Brown v. State, 31 Fla. 207, 12 South. Rep. 640; Reynolds v. State, 33 Fla. 301, 14 South. Rep. 723. The overruling of the motion to quash the indictment was, therefore, correct.

At the trial the defendant requested the court to give the two following instructions to the jury: "Unless you believe from the evidence that the defendant feloniously took the five hogs of Wesley Robinson, you will find the defendant not guilty." "The hogs described in the indictment are definitely described as five hogs; if you do not believe that five hogs were taken, you will acquit the defendant." The refusal of the court to give said instructions is assigned as error. The effect of these two instructions would have been to tell the jury that although the proof might establish the theft by the defendant of one, two, three or four of the hogs alleged to have been stolen, yet they could not convict unless the proof showed that *all five charged* had been stolen by the defendant. This is not good law, and there was no error in refusing to so instruct.

The refusal of the defendant's motion for a new trial is next assigned as error. All the grounds of this motion have already been disposed of except the grounds that the verdict was contrary to the evidence, and not supported thereby, and contrary to the law and the charge of the court. It is contended here that the evidence in this case puts it on all fours with the case of Dean v. State, 41 Fla. ——, 26 South. Rep. 638, that was reversed by this court on the grounds that the verdict was not supported by the evidence, and that this case must likewise be reversed on the same ground. While the defences in the two cases are the same, *viz*: that the property charged to have been stolen was taken under a *boni fide* claim of ownership in the taker, yet the proofs adduced in the present case, upon which hinged the truth of such defence, differs in several material particulars from that in the former. In the former case it was shown by uncontradicted proofs that at the time of the taking of the animal alleged to have been stolen the defendant asserted boldly and openly to several persons present, whom he called to his assistance, that he took the animal because it was his own, that he openly drove it in the day time along a public road to his home, sold it openly to another party in the neighborhood of the prosecuting witness and alleged owner, which vendee openly used the animal in the neighborhood, and the defendant never denied but boldly asserted such taking and always maintained that such taking was rightful because the animal taken was his own, and never receded from such claim. To all of which proof there was nothing to impeach or contradict it. In the present case, however, there was testimony tending to prove that the initial taking of the property was not open, and not made under a then asserted claim of ownership. That

while the defendant and some other parties were plowing in a field the hogs came into view in the field and upon some one suggesting that they would destroy the corn they were planting the defendant offered, not to take the hogs away because they were his, but to accommodate the plowmen by simply driving them out of their field for them, and that he thereupon acted on his offer and drove the hogs off towards a big gate that led out of the field, and the last that was seen of him or the hogs by the plowmen present was that he was going with them towards such big gate, ostensibly in furtherance of his accommodating offer to simply drive them out of the field. What became of him or the hogs after he got out of view of the plowmen in the field the evidence does not show, until some time after when one of the hogs is found in his pen and two others in the pen of another party to whom he had sold them, leaving two of the five that he drove out of the field wholly unaccounted for. Upon the discovery by the true owner of the one in his pen the testimony tends to show a very weakly asserted claim by the defentant of ownership in himself thereto, followed quickly by an offer to give them all up to the true owner and to pay the damages if any. All of these facts bore directly upon the *bona fides* of the asserted claim of ownership of the stolen property, and although there was conflicting testimony on these points, the jury, we think, were justified from them in concluding that such asserted claim of ownership was not made in good faith, and that, therefore, the crime of larceny was made out.

The judgment of the court below is affirmed.