JOHN EDWARDS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. It is essential to sustain a conviction under the first clause of the first section of Chapter 4032, laws of 1891, that the false promise relied on should be the inducement for obtaining the money or property of another.

2. It is essential to sustain a conviction under the first clause of the first section of the statute mentioned in the foregoing headnote that the evidence should show that the convicted party obtained the money or property with intent to injure or defraud—the intent being the gist of the offense.

This case was decided by Division A.

Writ of Error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*John M. Calhoun,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

HOCKER, J.

The plaintiff in error, John Edwards, was indicted, convicted and sentenced at the Spring Term of the Circuit Court in Jackson county, 1902, and sued out a writ of error from this court to this term.

The indictment is based on Chapter 4032, laws of 1891, and in substance charges that plaintiff in error, on the second of July, 1901, in Jackson county, by false promises and with intent to injure and defraud J. E. McLeod and brother, a firm composed of J. E. McLeod and W. J. McLeod did obtain from said McLeod and brother the sum of five dollars and twenty-five cents.

The assignments of error are: 1st. The court erred in refusing the motion to quash the indictment filed by the defendant in error in the court below.

2nd. The court erred in refusing to grant a new trial.

The record proper shows the motion to quash the indictment, but does not show that the court made any ruling thereon. The bill of exceptions shows the motion to quash and the ruling, but it is established in this State that this court will not take cognizance of an assignment of error based on the ruling of the court below, on a motion to quash an indictment, unless the record proper shows the motion and the ruling thereon. Raines v. State, 42 Fla. 141, 28 South. Rep. 57; Brown v. State, 42 Fla. 184, 27 South. Rep. 869.

The motion for a new trial embraced the following grounds:

5th. The verdict is not supported by the evidence.

6th. The verdict is contrary to the evidence; and these are the only grounds of said motion presented in the

brief of plaintiff in error. The State introduced on the trial two witnesses, W. J. McLeod and J. E. McLeod, and the defendant testified in his own behalf.

It is essential to a conviction under the first clause of section 1 of the statute that, first, money or personal property shall be obtained from another *by* false promise, and, second, that the money or property shall be obtained with *intent* to injure or defraud.

The defendant's testimony which is not contradicted, and which under all the circumstances seems reasonable, shows that he was at work for a Mr. Hilton, chopping turpentine boxes; that Mr. Luke Simmons, who had formerly been a woods rider for Hilton, but who was then in the employment of the McLeods, promised him better wages if he would work for the latter, and insisted on his accepting the offer; and finally meeting him in the road persuaded him to go over the next day, which defendant agreed to do, and meeting Simmons in the road on his way the latter greeted him kindly and said he would give him an order on the McLeods and they would *give* him what money he wanted, and directed him to get the money and pay Mr. Hilton what he owned him. All this is uncontradicted by either of the McLeods or Simmons, though they were all present at the trial. It appears there were differences between Hilton and the McLeods, who were turpentine operators in the same section, and rivals in the labor market. Mr. J. E. McLeod testified, among other things, that he knew defendant Edwards; "that Edwards came to our still on the 2nd of July, 1901, and brought a note from Mr. Luke Simmons. I have not the note now. It was here at the preliminary trial. The tenor of the note was that Edwards was a good man for our work *if we could get him*.

He, the defendant, said to me on that occasion at my still, in the presence of my brother, that he owed Mr. Hilton, for whom he had been working; $5.25, and wanted to get that amount of money from me with which to pay Mr. Hilton what the defendant Edwards then owed him. He said he had quit Mr. Hilton and had employed one Merritt to move him. I loaned him the $5.25 and he promised me that he would move to my still next morning and go to work for me at chopping boxes. I would not have loaned him this money if I had not expected him to pay me back in work. * * * I know that he has never paid that back either in money or work. I have no ill-feeling against the defendant. His former employer, Mr. Hilton, and myself had been prior to that time, and are now, having some law suits over some timbered lands. Mr. Luke Simmons, who was working with me at the time John got the money, as my woods rider, was a short time bofere a woods rider for C. C. Hilton, and the defendant in this case had also been working for C. C. Hilton."

From this uncontradicted evidence we think it clear that the Messrs. McLeod were anxious to get Edwards into their employment, and that they advanced him $5.25 as a sort of consideration to get his promise to work for them, and that it does not appear that the inducement for lending him the money was his promise to work, but that the loan of the money was the inducement for his promise. This is not what the statute contemplates.

Furthermore, the defendant says that at the time he got the money he fully intended to move over to Mr. McLeod's place and go to work, but Mr. Hilton would not let him do so; that Hilton claimed he (defendant)

owed him $10.00, and said that if defendant left him he would prosecute defendant for quitting work without paying him; that he had no money of his own and was depending on his work for getting money. This is not contradicted in any particular whatever, and seems to be a perfectly reasonable explanation of the reason why he did not go to work for the McLeods. This does not show that defendant obtained the money with *intent* to injure or defraud.

The judgment is reversed and a new trial granted, at the cost of defendant in error.