CHARLES O. BRAHAM, *Plaintiff in Error*, v. STATE OF FLOR-
IDA, *Defendant in Error.*

Division A.

Opinion Filed November 14, 1927.

*Gordon R. Broome,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,*
Assistant, for the State.

ELLIS, C. J.—Charles O. Braham interested some people
in Miami by a story of buried treasure in Cuba. He said
that he obtained his information from a man in Seattle,
Washington, who died in that city sometime before, be-
queathing the treasure to Braham. The proposition was
that if the persons would advance the money to pay ex-
penses to Cuba they would go in search of the treasure and
when it was found a division would be made of it in such

manner as would yield to the investors a large return on their unpractical investment.

Fifty dollars was advanced to Braham with which to supply him with some needed wearing apparel and the party, consisting of W. C. Nelson, his wife, daughter and Braham, started for Cuba.

Arriving at that island, supposed to have been at one time a central point of interest to the owners of Spanish ships carrying gold and silver from Mexico, as well as to the romantic "free lances" of the Spanish Main who preyed upon them, the four seekers after lost or buried treasure established themselves in a hotel where the credulous Mr. Nelson advanced three hundred dollars more, which seems to have been paid to one Chinaman to procure the presence of another Chinaman who would furnish the necessary information as to the location of the treasure.

The enterprise resulted in failure. They seem not to have even dug in the earth for the gold. They went upon the place one Sunday morning for that purpose and were driven away by some Chinamen who were living there at the time. So whether the treasure is there now or was ever there is left to conjecture.

An information was filed against Braham charging him with a violation of Chapter 8466, Laws of Florida, 1921, an act entitled "AN ACT Relating to Fraud or the Attempt to Defraud by Assuming to Have or be Able to Obtain Certain Information Whether the Same Exists or Not; to Prescribe Certain Evidence, and to Provide Penalties for the Violation of This Act." After trial, during which much was said that was irrelevant, the defendant was convicted and sentenced to imprisonment in the penitentiary at hard labor for a period of five years.

The judgment is attacked on writ of error. A motion to quash the information was made; then, after verdict, a

motion in arrest of judgment and a motion for a new trial were made. They were all overruled.

The statute referred to above was designed to punish a species of criminal conduct known as obtaining money or other thing of value by false pretenses. The practice which was becoming frequent in some portions of the country of obtaining money from the avid as well as the credulous by the use of symbols and paraphernalia in the operation of confidence games and spurious evidences of race track communications by secret wires gave rise to demand for the statute. Although the language is broad enough perhaps to cover such frauds it cannot be made applicable to an idle story of buried wealth coupled with a promise to share the find if it should be discovered.

The information in this case charges merely that the defendant assumed to have information, "secret, advance and inside," of a certain buried treasure in a foreign country and upon that representation obtained money from Nelson; that the defendant knew the representation to be false but that he made it to obtain the money which was given to him by Nelson. Assuming the allegations to be true, no indictment would lie under the statute for an idle tale or an improbable or absurd assertion such as that alleged, so shallow as to be incapable of imposing upon a person. See 25 C. J. 598.

Although it is alleged that the prosecutor believed the story of the defendant it is apparent that the motive or inducement moving Nelson to part with his money was not the assertion that the defendant had secret information about a buried treasure, but that by advancing the money the Nelsons would get the defendant to go with them in search of the treasure which would be divided if found. See Edwards v. State, 45 Fla. 22, 33 South. Rep. 853.

The evidence in the case, as shown by the bill of excep-

tions, was wholly insufficient to support the allegations of the indictment. Neither the falsity of the defendant's representations as to his information nor the non-existence of the treasure was shown. Under the statute, however, the existence or non-existence of the treasure would be immaterial.

The information charges that three hundred and fifty dollars were paid to the defendant. The evidence is that fifty dollars were advanced to him in Miami to enable him to procure some clothing and the remainder was paid out in Cuba to obtain the services of a Chinaman to find another Chinaman who could probably locate the place upon which the treasure was supposed to have been buried by the person who gave that information to defendant.

The transaction seemed to be a joint adventure in search of treasure supposed to be buried in a foreign country. The spirit to undertake the enterprise was awakened in Nelson by the story of the defendant which was never shown to be untrue.

The judgment of the court is reversed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.