THE STATE OF IOWA, Appellee, v. COLE GRANT et al., Appellants.

1. **Conspiracy**: INDICTMENT: SUFFICIENCY. An indictment charging that the defendants unlawfully conspired and confederated together for the purpose, and with fraudulent and malicious "intent" and purpose "to obtain" certain notes, and that they "did obtain" said notes by "so conspiring and confederating together," sufficiently charges a mutual intent, and is not objectionable as charging merely a conspiracy with "intent" to obtain said notes.

2. ———: ———: MEANS USED FOR COMMISSION OF CRIME. Where an indictment charges a conspiracy to do an act which is in itself a crime, it is sufficient that the act be described in the terms by which it is generally known in law, without alleging the means used for its accomplishment.

3. ——: ——: FALSE PRETENSES. The charge that the defendants conspired "for the unlawful, malicious and felonious purpose, and with malicious intent and purpose" to obtain said notes, and did obtain them "by the making of false statements and representations and promises," is a sufficient allegation that said act was committed "designedly," and accomplished by "false pretenses."

4. ——: ——: DUPLICITY. An indictment charging a conspiracy to commit an act in itself criminal, and also the commission of such act, is not bad for duplicity, where no conviction is sought on account of the overt act.

5. ——: ——: ——. Neither is such indictment bad for duplicity because of the charge that the conspiracy was to obtain the signatures of a number of persons to several and distinct notes, the agreement to do said several acts being charged as a single conspiracy.

6. ——: ——: OVERT ACT CHARGED: MERGER. Where an indictment charges a conspiracy and also an overt act, which in itself is criminal, the conspiracy is not merged in the higher offense, where the defendant is placed on trial upon the charge of conspiracy only.

7. ——: ——: NAMING PERSONS INJURED. The defendants being charged with having accomplished their purpose as to certain persons named "and divers other persons of said county," whom, it was alleged in another part of the indictment, were "to the grand jury unknown," held, that the indictment was not subject to objection because the names of such "other persons" were not set out.

8. ——: EVIDENCE: DECLARATIONS OF CO-CONSPIRATORS. Evidence of the acts and declarations of the several conspirators is admissible before prima facie proof of the existence of a conspiracy, especially where assurance is given by the prosecution that such proof will be produced in the further progress of the trial.

9. ——: ——: ——. Proof of the declarations of one conspirator before any conspiracy was formed, or after the common enterprise has been fully accomplished, is not admissible against a co-conspirator, unless ratified by him upon being brought to his notice.

10. ——: ——: DECLARATIONS OF AGENTS. Where agents are employed in carrying out the purpose of a conspiracy, evidence of the acts and declarations of such agents made during the progress of the conspiracy, and in furtherance of its objects, and which were authorized by the conspirators, is admissible against the latter.

11. ——: PROOF: INSTRUCTIONS TO JURY. An instruction to the jury that if, from the evidence, they were "satisfied beyond a reasonable doubt, and believed as reasonable men," that the defendants were working together with the common object of obtaining said notes, they should find that the conspiracy was established, held, not to be prejudicial to the defendants.

12. ———: INTENT TO DEFRAUD: INSTRUCTION TO JURY. An instruction to the jury that they must find that the defendants sought to accomplish their purpose by "false and fraudulent pretenses and representations," sufficiently charges an intent to defraud.

*Appeal from Hamilton District Court.*—HON. D. R. HINDMAN, Judge.

MONDAY, OCTOBER 10, 1892.

THE defendants were indicted, convicted and sentenced for a conspiracy, and appeal.—*Reversed.*

*D. C. Chase,* for appellants.

*John Y. Stone,* Attorney General, and *Thos. A. Cheshire,* for the State.

KINNE, J.—It appears that in April, 1888, the defendant Cole Grant came to Webster county, Iowa, and on the thirteenth of the same month made a contract under the name of Cole Grant & Co. with Breece & Breece of Ft. Dodge to manufacture a combination slat and wire fence, which he had the right to manufacture and sell in that county. He procured from said firm a certificate that they had entered into such a contract with Cole Grant & Co. He then employed a number of men, among them the defendant, McNeal, to establish agencies among the farmers, authorizing said agents, by written and printed contracts, to build or sell the manufactured fence aforesaid, which they were to procure from Breece & Breece, and which was to be furnished them at certain prices per rod, depending upon the height of the fence desired and the number of wires used therein. On all fences sold by Breece & Breece at the factory, there was to be credited to the township agent, wherein the fence was to be used, the sum received in excess of the prices provided for in the agent's contract. The fence was to be sold so

that the agent's net profit should be fifteen cents per
rod, or forty-eight dollars per mile. The agent, on his
part, agreed to use his best endeavors to sell fence in
his territory, keep an account of the same, and remit
to Cole Grant & Co. five cents per rod of his commis-
sion, after he had received all of his commission,
amounting to three hundred and sixty dollars on the
first seven and one-half miles that he sold, having paid
Grant & Co. one hundred dollars commission on two
miles of fence at the time he entered into the contract.
Said two miles of fence were to be sold within one year
from date of the contract; if not, Grant & Co. were
authorized to cancel the contracts, and appoint another
agent, returning to the first agent his original obliga-
tion of one hundred dollars, but no commissions paid
thereon. These forms of contract were, it appears,
furnished to all employees, together with blank notes to
be signed by those who might be thus appointed agents.
The commission which the contract provided to be paid
down was in the form of a note taken by the employer.
The contracts, while varying in some minor details, were
all substantially as above described.

I. It is insisted that the indictment in this case is
insufficient in that it does not charge that the defendants
conspired "to obtain" the notes, and also
that the mutual "intent" of the defend-
ants is not averred. The indictment
charges that "the said Cole Grant and A. W. McNeal,
on the tenth day of May, 1888, and at various other
days to this grand jury unknown, in the county afore-
said, did unlawfully, willfully and feloniously conspire
and confederate together for the unlawful, malicious
and felonious purpose, and with fraudulent and
malicious intent and purpose, wrongfully, feloniously
and unlawfully to obtain from" (certain parties therein
named and others) their names and signatures to "cer-
tain written and printed promissory notes and evidences

1. CONSPIRACY:
indictment:
sufficiency.

of debt, the fraudulent making of which would be forgery, by false statements and representations and promises." It further charges that the defendants did obtain certain notes, by "so conspiring and confederating together," of the value of one thousand dollars, from persons named in the indictment and from others, and that the signatures of such persons to said notes, the false making of which would be forgery, were obtained by "false and fraudulent representations, statements and promises," etc., and all of which said false representations, statements and promises were made in pursuance "of said conspiracy and combination between the defendants."

Code, section 4087, provides: "If any two or more persons conspire or confederate together with the fraudulent or malicious intent wrongfully to injure the person, character, business, or property of another, or to do any illegal act injurious to the public trade, * * * or to commit any felony, they are guilty of a conspiracy," etc. Code, section 4073, provides: "If any person designedly and by false pretense, or by any privy or false token, and with intent to defraud, obtain from another any money, goods, or other property, or so obtain the signature of any person to any written instrument, the false making of which would be punished as forgery, he shall be punished by imprisonment in the penitentiary not more than seven years, or by fine not exceeding five hundred dollars and imprisoned in the county jail not exceeding one year." And section 4104 of the Code defines a felony thus: "A felony is a public offense which is, or, in the discretion of the court, may be, punished by imprisonment in the penitentiary."

The indictment fully and clearly charges the defendants with the crime of conspiracy to commit a felony. The claim made by the appellants that the indictment should in terms charge that the defendants

conspired "to obtain," etc., instead of with "the intent to obtain," etc., hardly merits serious consideration, in view of the language of the statute under which it was drawn. It reads: "If any two or more persons conspire or confederate together with the fraudulent or malicious intent to" do certain acts, they shall be guilty of a conspiracy. In the particular complained of, the indictment follows the provisions of the statute as closely as possible. This has always been held sufficient. Furthermore, there can be no question that the charge as made is of a mutual intent to do the acts complained of. They are charged with having conspired together to commit the crime named, and with in fact having committed it. The indictment in this respect complies with Code, sections 4085, 4086.

II. It is said that the indictment is defective, in that it fails to fully disclose the means by which the crime was to be accomplished. It is well settled in this state, and is the law in many states, that, where the indictment charges a conspiracy to do an act which is a crime, it is sufficient if it be described by the proper name or terms by which it is generally known in law. It is only where the charge is that an act in itself not criminal is sought to be accomplished in an illegal manner, or by illegal means, that the means used for its accomplishment must be averred. *State v. Potter*, 28 Iowa, 554; *State v. Savoye*, 48 Iowa, 562; *State v. Ormiston*, 66 Iowa, 148; 4 Amer. and Eng. Encyclopædia of Law, pp. 624–626.

2. ——: ——: means used for commission of crime.

III. It is contended that the indictment fails to charge a statutory offense, because the words "designedly, and by false pretenses," which are used in our statute defining the crime of obtaining property by false pretenses, are not used therein. The language of the indictment is that the crime was accomplished "by the making of false state-

3: ——: ——: false pretenses.

ments and representations and promises." These terms are in legal effect synonymous with those used in the statute. A "pretense" is defined as "a representation; simulation; device." Anderson's Law Dictionary. "False pretenses" are said to be "false representations and statements made with fraudulent design," etc. Black's Law Dictionary. And again, as "a representation of some fact or circumstance calculated to mislead, which is not true." Anderson's Law Dictionary. Also, "any person who by false and fraudulent representations or statements of an existing or past fact, made with knowledge of its falsity, and with the intent to deceive and defraud, induces another to part with money or property of value, is guilty of a false pretense." 7 Amer. and Eng. Encyclopædia of Law, 700. "A representation of some fact or circumstance calculated to mislead, which is not true." *Com. v. Drew*, 19 Pick. 179. This court has held a "pretense" to be "the holding out or offering to others something false and feigned. This may be done either by words or actions, which amount to false representations. In fact, false representations are inseparable from the idea of a pretense." *State v. Joaquin*, 43 Iowa, 131. And we have said that in some cases "the false statement and the false promise may be considered together in constituting the false pretense." *State v. Montgomery*, 56 Iowa, 198. We have held, too, an indictment good, though the word "pretense" was not used therein. *State v. Neimeier*, 66 Iowa, 636.

Nor is it material that the word "designedly" is not found in this indictment. It is charged therein that the defendants conspired "for the unlawful, malicious, and felonious purpose, and with fraudulent and malicious intent and purpose, * * * to obtain," etc. The meaning of the words "intent and purpose" used in the indictment is the same as "design." "Design" is defined as "purpose or inten-

tion, combined with plan, or implying a plan in the mind." Black's Law Dictionary. Again, as "aim; intent; purpose; object; end in view." Anderson's Law Dictionary. Also, as ";purpose; intention; aim," etc. 3 Amer. and Eng. Encyclopedia of Law, 643; Webster's Dictionary.

IV. It is said that the indictment is bad for duplicity; that it charges several offenses. This claim

4. ——: ——:
duplicity.

is not well founded. It is clear that only one offense is intended to be charged, and the trial was had upon that theory. True, it is not necessary to charge the commission of the overt act which was the ultimate object of the conspiracy. *Commonwealth v. Judd*, 2 Mass. 329; *Commonwealth v. Warren*, 6 Mass. 74; *State v. Buchanan*, 5 Har. & J. 317; *State v. Noyes*, 25 Vt. 415. But it has been held proper to charge the overt act in aggravation of the offense, as the conspiracy continues during its commission. 3 Greenleaf on Evidence, section 95; *State v. Mayberry*, 48 Me. 218; 4 Am. and Eng. Encyclopædia of Law, 624, 625; 2 Whart. Crim. Law [8 Ed.], sections 1382, 1385; *State v. Ormiston*, 66 Iowa, 146. The rule in cases where the indictment charges conspiracy to commit a crime, and also the overt act, is that it does not necessarily follow that the indictment was intended to charge more than a conspiracy. And this is especially true where, as in this case, the indictment does not show a "design to claim a conviction for the injury committed, though the evidence should fail to sustain the charge of conspiracy." It does not appear, in this case, that it was intended by alleging the overt act to put the defendants on trial therefor, nor was such the result. Hence it is not vulnerable to the objection made as to duplicity. *State v. Ormiston*, 66 Iowa, 146.

V. It is insisted with much confidence that the indictment charges more than one offense because

5. —: —: —.   the object, aim, and purpose of the
conspiracy is charged to be to obtain
the signature of the several persons to several and
distinct notes, and it is said each of these transactions
constitutes a separate offense. The agreement to do
these several acts, though consummated at different
times, and with different individuals, and in some cases
by different employees of the defendants, is charged as
constituting a single conspiracy. As is charged, they
are but a part and parcel of a single scheme. The
conspiracy might embrace the purpose and object of
obtaining signatures to notes from a hundred different
individuals, and, so far as that fact is concerned, it
would be none the less a conspiracy. The design
charged was to obtain the signatures of all the parties
named, and others unknown, to notes. Must it be
held, then, that although there was but one agreement
or arrangement which embraced the intention to pro-
cure all these notes, as to each note and each individual
the conspiracy was separate? Manifestly, such cannot
be the law. The agreement of the conspirators may
contemplate dealings with one man or many, at the
same or at different times, in relation to the same or
different matters. While in one sense the procuring
of the signature of each individual to a note was a
distinct transaction, yet each and all together consti-
tuted a single illegal aim, object, purpose, and agree-
ment, and but a single offense. These several con-
templated acts were a part of a system or scheme of
conspiracy. Wharton Crim. Ev., section 32; *Card v.
State*, 109 Ind. 415.

VI. Again it is contended that as the indictment
charges a conspiracy, and also the execution of the
6. —: —:   overt act, the conspiracy is merged in the
overt act
charged:
merger.   higher offense. From what we have
already said in division five of this opinion,
it is clear there can be no merger in this case. This

form of an indictment in this respect finds support in the best authorities. 2 Wharton, Crim. Law [8 Ed.], section 1381.

VII. Another objection made to the indictment is that it does not set out the means used to defraud. The appellants concede "it would be sufficient, if the charge was a conspiracy to commit a felony, to name it in the words of the statute, without setting out anything further." We have held that this indictment does charge a conspiracy to commit a felony under the statute, and in such cases the means used to defraud need not be set out. 2 Wharton, Crim. Law [8 Ed.], section 1343; 4 Am. and Eng. Encyclopædia of Law, 625, 626.

VIII. Complaint is made that the names of the persons injured are not all set out in the indictment. A number of names are given, followed by the words, "and divers other persons of said county." Afterwards it is alleged that by so conspiring and confederating together, and by making "to said" (naming parties) "and other persons to this grand jury unknown," etc. It was not incumbent on the state to unnecessarily repeat the words "to the grand jury unknown." The omission to use them in the first instance was not such a defect or imperfection as tended to the prejudice of the substantial rights of the defendants upon the merits. There was sufficient alleged in the indictment to indicate clearly the offense and the person charged. Code, section 4086.

7. ——: ——: naming persons injured.

IX. It is urged that the court erred in receiving evidence of the individual acts and declarations of the alleged conspirators before a foundation was first laid by establishing *prima facie* the fact of the existence of the conspiracy. The general rule undoubtedly is that a *prima facie* case of conspiracy must be made before

8. ——: evidence: declarations of co-conspirators.

evidence of the acts and declarations of the alleged conspirators can be introduced. But it has been found necessary to modify this rule, and it is now quite common to permit evidence of acts and declarations to be first introduced. This would certainly be proper where, as in the case at bar, the state promised in the further progress of the trial to introduce evidence to *prima facie* established a conspiracy. 1 Greenleaf on Evidence, section 111; 2 Wharton on Criminal Law [8 Ed.], section 1401; 4 American and English Encyclopedia of Law, 635, 636. The matter of requiring *prima facie* proof of the conspiracy prior to the admission of evidence of acts and declarations of the conspirators is a matter largely in the discretion of the court. 1 Greenleaf on Evidence, section 111; *Spies v. People*, 122 Ill. 1; 12 N. E. Rep. 865, and 17 N. E. Rep. 898; *State v. Winner*, 17 Kan. 298.

X. Error is assigned in the admission of evidence touching the acts and declarations of the defendants against each other. Some of these acts and declarations occurred and were made prior to the time the conspiracy charged could possibly have existed, and others after the purpose and object of the conspiracy had been accomplished. We cannot refer in detail to all these cases, but a reference to some of them will enable us to state the law which we consider applicable thereto.

One Durand, a justice of the peace, was permitted to testify, over the defendants' objection, as to statements made by Grant, a defendant herein, on a preliminary hearing before said justice, in a case wherein the co-defendant herein, McNeal, was accused of the crime of forgery growing out of some of these same transactions. This hearing was had after all the notes had been taken in Webster county, and the aim of the conspirators accomplished. The witness Waterbury testified to certain conversations with the defendant

McNeal which occurred after his arrest, and, so far as appears, after the common enterprise of the defendants was either at an end or abandoned. The witnesses Berrin and Wolfinger were allowed to testify as to acts and declarations of the defendant Grant made prior to the time the defendant McNeal came to Webster county, it not being shown that such acts and declarations were ever brought to the knowledge of McNeal, or that he ever ratified them or assented thereto. We must not forget that these defendants are the only persons charged with being parties to this conspiracy. It is clear, then, that no conspiracy could exist between them until McNeal came to Webster county. It appears that Grant operated for a time in Webster county before McNeal arrived there. The court properly charged the jury that the conspiracy must have been formed in Webster county, and that it required two or more persons to form one. It follows that as it is not charged that any conspiracy was formed for the illegal purpose set out in the indictment, except that said to have been entered into by Grant and McNeal, and as McNeal had not been in Webster county when the acts and declarations in controversy were made, and as there is no evidence that such acts and declaration were ever brought to his notice, or assented to or ratified by him, such evidence is clearly inadmissible as against McNeal. As to the evidence of acts and declarations of Grant occurring after McNeal's arrest, the object of the conspiracy, if any existed, had then been accomplished. The notes had been procured prior to McNeal's arrest. The evidence was improperly admitted as against McNeal. The testimony of the witness Waterbury, heretofore referred to as to declarations of McNeal, should not have been admitted as against the defendant Grant, for the reasons above given. The indictment charges that the purpose of the conspiracy was to obtain the promissory notes of

certain parties. This, then, was the consummation of the illegal and corrupt agreement. While the law is well settled that "where a conspiracy is once established, and until the consummation of the object in view, if the conspiracy lasts that long, every act and declaration of one conspirator in pursuance of the original concerted plan, and in reference to, and furtherance of, the common object, even in the absence of the others, is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each," and all are "deemed to assent to or commend what is said or done by anyone in furtherance of the common object," it is equally well settled that such acts and declarations are not admissible if made after the common enterprise is at an end, except as against the party making them. *Ford v. State,* 112 Ind. 373, 14 N. E. Rep. 246; 1 Greenleaf on Evidence, section 111; *Card v. State,* 109 Ind. 415, 9 N. E. Rep. 591; *Johnson v. Miller,* 63 Iowa, 529; *State v. Weaver,* 57 Iowa, 730; *Solomon v. Kirkwood,* 55 Mich. 256, 21 N. W. Rep. 335; *Estes v. State,* 23 Tex. App. 600, 5 S. W. Rep. 176; *Armstead v. State,* 22 Tex. App. 51, 2 S. W. Rep. 627; *Spies v. People,* 122 Ill. 1, 12 N. E. Rep. 865, 17 N. E. Rep. 898, note 4; 2 Rice on Evidence, section 336; 4 American and English Encyclopædia of Law, pp. 631-635.

XI. The witness, Healy, was permitted to testify to statements made by Grant, after both of the defendants had been arrested, with reference to a note taken by defendant McNeal of one Talcott, and who was then attempting to get it back. This conversation occurred three weeks after the note was given, and after the purpose of the conspiracy had been accomplished. For the reasons heretofore given, the evidence was not admissible as against McNeal.

XII. It is claimed that evidence of acts and declarations of parties not charged with being in the con-

10. ——: ——: *declarations of agents.* spiracy was erroneously admitted. The persons referred to, or most of them, were employees of the defendant Grant, working for him in the establishing of township agencies for the sale of the fence with authority to take notes for the commission that would be due Grant under the contract. They were not co-conspirators, but, as we have said, were employees. They appear to have been furnished by Grant with notes and contracts for use in the business. It was not necessary that the defendants should in person have made the alleged false pretenses, or obtained the notes. They might employ others to act for them in that respect, and, if their acts and representations were authorized by the defendants they would be admissible in evidence against them in case they were made during the progress of the conspiracy, and in furtherance of its objects. *Commonwealth v. Harley*, 7 Metc. (Mass.) 462; 2 Wharton on Criminal Law, [8 Ed.], 1171, 1202. This doctrine is also in harmony with the fourth division of the charge asked by the defendants and given by the court.

XIII. The court, at the instance of the state, gave to the jury the following instructions:

"The fact of conspiracy need not necessarily be established by direct and positive evidence, but may be 11. ——: proof: *instructions to jury.* proved and established by circumstantial evidence. If, from the acts and conduct of the defendants, as shown by the evidence and by the circumstances and transactions admitted in evidence, the nature of the connection between the defendants, and the relation in which they stood to each other in such transactions, the nature of the business in which they are engaged, and the part taken by each of them in the several transactions and delivery of the notes, you were satisfied beyond a reasonable doubt, and believe as reasonable men, that they were working and acting together with the common object and purpose of

obtaining said notes by means of false and fraudulent pretenses and representations, in pursuance of a combination or prearranged plan, then you should find that the conspiracy or combination between them existed, and is established.''

The first exception taken to it is that the words, ''and believe as reasonable men,'' operate to qualify the preceding words, to the detriment of the defendants. The words objected to, it seems to us, clearly add to what precedes them; that is, literally read, the jury are not only required to be ''satisfied beyond a reasonable doubt,'' but they must also, in addition thereto, ''believe as reasonable men.'' Technically speaking, the wording of the instruction adds a further requirement to that legally necessary to authorize the jury to find the defendants guilty; hence the defendants ought not to object because the state is required to do more to make a case than the law requires.

XIV. It is also objected that the instruction does not include the thought of the ''intent to defraud.'' 12.——: intent to defraud: instructions to jury. The instruction charges that if the defendants ''were working and acting together, with the purpose of obtaining the notes by false and fraudulent pretenses,'' etc., this sufficiently meets the objection made.

XV. The appellants maintain that the second instruction given by the court at the instance of the state was error in assuming a state of facts not existing. We need not set out the instruction. An examination of this record discloses the fact that there was evidence which justified the giving of the instruction.

Exceptions are taken and urged to the giving of other instructions. We, however, discover no error in the action of the court in that regard.

XVI. Finally, it is insisted that the evidence is not sufficient to sustain this verdict. Inasmuch as this case must be reversed, for reasons already indicated, and as

the evidence will undoubtedly be somewhat different upon another trial, we do not deem it necessary or advisable to enter into a discussion of the question. For the errors heretofore mentioned, the judgment of the district court must be REVERSED.