## FREESE v. THE STATE.

[No. 19,828.   Filed January 7, 1903.]

MURDER.—*Indictment.*—An indictment for murder charging that defendants on a certain day "at the county and State aforesaid, did then and there feloniously, purposely, and with premeditated malice, kill and murder one William Gray, by then and there feloneously, purposely, and with premeditated malice, shooting at, against, and into, and thereby mortally wounding the said Gray, with a certain deadly weapon, called a revolver, then and there loaded with gunpowder," etc., sufficiently describes the offense charged.   *p. 598.*

CRIMINAL LAW.—*Evidence.—Acts and Declarations of Third Party.—Admissibility.*—Where on the trial of one charged with a crime, a common purpose between defendant and her husband to carry out the unlawful act has been established by proper evidence, the acts and declarations of the husband in furtherance of the common purpose are admissible in evidence whether made in the presence of the defendant or not.   *pp. 600-602.*

TRIAL.—*Motion to Strike out Evidence.—When Premature.*—Where a witness is permitted to testify to certain facts upon the promise to the court, made by the party offering the evidence, that other testimony would be introduced which would render the offered evidence admissible, a motion to strike out made at the close of the witness' testimony, and not at the close of the testimony on that particular point, was premature.   *pp. 603.*

MURDER.—*Insanity.—Sufficiency of the Evidence.*—A defendant charged with murder pleaded insanity, and introduced testimony tending to prove her mental unsoundness.   The State offered in rebuttal no evidence to the contrary.   *Held,* that the jury was not bound to acquit the defendant; since they, being the sole judges of the weight of the evidence, might find the same unworthy of belief, and disregard it.   *pp. 603, 604.*

From Shelby Circuit Court; *Douglas Morris,* Judge.

Myra Freese was convicted of murder in the second degree, and appeals.   *Affirmed.*

*L. E. Ritchey,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores* and *C. C. Hadley,* for State.

HADLEY, C. J.—Appellant was indicted jointly with her husband Martin Freese, for the murder of William Gray,

on July 25, 1901. Appellant's motion to quash the indictment was overruled, and, upon her plea of not guilty, she was accorded a separate trial by jury, which resulted in a verdict of guilty of murder in the second degree, upon which verdict, over her motion for a new trial, she was sentenced to confinement in the woman's prison for and during her natural life.

· The indictment, in substance, charges that appellant and Martin Freese on the 25th day of July, 1901, at the county and State aforesaid, did then and there feloniously, purposely, and with premeditated malice, kill and murder one William Gray, by then and there feloniously, purposely, and with premeditated malice, shooting at, against, and into, and thereby mortally wounding the said William Gray, with a certain deadly weapon, called a revolver, then and there loaded with gunpowder and leaden balls of which mortal wounding the said William Gray then and there instantly died, etc.

The objection to the indictment is that it does not describe the offense with sufficient certainty. The statute requires that an indictment contain "a statement of the facts constituting the offense, in plain and concise language without unnecessary repetition." §1800 Burns 1901. We do not perceive wherein the indictment before us fails to conform to both the letter and spirit of the statute. No reasonable doubt can arise as to the place, or as to the precise nature of the offense charged, or as to the means by which it was committed, or as to the person against whom it was committed, and, with these things stated in clearness and certainty, the indictment must be held sufficient. The defendant pleaded not guilty and filed a special answer of insanity.

The undisputed facts are these: The appellant is fifty-nine years of age, and lived with her husband in Franklin, Johnson county, Indiana. The deceased had previously boarded with them, and within a few weeks before the

homicide, he, as appellant claims, went to her house and assaulted her. Soon thereafter, in informing her daughter about the assault, appellant cried and appeared much excited. The deceased, a stone-mason, on July 25, 1901, was engaged under the Red Mill, repairing the foundation for Mr. Rasp, which mill is in Shelby county, eight or ten miles distant from Franklin. In the forenoon of that day appellant, traveling with her husband in a buggy, went from Franklin to the Red Mill; and as they approached the latter place they were met by Mr. Rasp, the mill owner. A little conversation ensued. Rasp asked Martin Freese if he was looking for a job, and the latter replied that he was. Martin Freese then asked where Billy Gray was, and was informed that he (Gray) was at work under the mill. Rasp then invited appellant to go to the house, which was near by, where she would find women to entertain her; but she declined, remarking that she would go with her husband. Together appellant and her husband proceeded under the mill, where they had been informed Gray was at work, and, seeing Gray, they at once approached him, the husband holding on to appellant's arm, and, without any one uttering a word, appellant presented a revolver and shot him. Gray staggered away about nineteen feet and fell, whereupon appellant walked to him, and standing over him fired another shot into his body. Then, without saying a word, appellant and her husband left the mill together, and went to their buggy where they were joined by Brandenburg, to whom Martin Freese, in the presence of appellant, in explaining the act, said: "This is my wife. This man came down and came very near drowning her once, and tried to commit a rape, and now she gives him something." They then got into the buggy and drove to their home. Gray died almost instantly, and without speaking.

In the course of the trial, and over appellant's objection, the court permitted Joseph McCain, a witness for the State, to testify that about fifteen days before the homicide, Mar-

tin Freese, husband of appellant, purchased of witness, who was a dealer, a second-hand revolver, and that he returned with it the same day about noon, and wanted to exchange it, saying, in the absence of his wife (the appellant), that "the revolver wasn't easy enough on trigger; that he wanted it for his wife to shoot cats with, and she didn't like it;" he then exchanged the first one purchased for a second-hand smaller one, and later on in the afternoon of the same day he again returned, and exchanged the second revolver for a third and new one, he paying the dealer one more dollar; that the day before the tragedy Martin came again and wanted to purchase another revolver, and witness inquired what he wanted another one for, and Freese replied that he was going a fishing and he wanted it to shoot fish; that "the other one was for his wife and he wanted one for himself."

Appellant's counsel complains of the admission of this testimony, because, as he insists, the declaration was made in the absence of Mrs. Freese, without her consent or knowledge, and without other evidence of collusion between them. We recognize the general rule to be that the acts and declarations of third persons, made in the absence of the accused, are not admissible in evidence against the latter when placed upon his trial; but, when it appears to the satisfaction of the trial court that a *prima facie* case of concert to perform the unlawful act has been shown, the fact of such concert may then become a material question in the case, for the ultimate determination of the jury. And when such *prima facie* case is established to the satisfaction of the court, then it is competent to admit against each other the acts and declarations of the wrongdoers in furtherance of the common purpose. "When a common purpose to prosecute an unlawful scheme has been shown," said Mitchell, J., in *McKee v. State*, 111 Ind. 378, "the overt acts or declarations of any one, or all concerned, while engaged in the execution of such purpose, are admissible." *Card*

v. *State,* 109 Ind. 415; *Wallon* v. *State,* 88 Ind. 9; *Williams* v. *State,* 47 Ind 568; *State* v. *McGee,* 81 Iowa, 17, 46 N. W. 764; 1 Greenleaf, Evidence (15th ed.), §111.

Neither in creating a *prima facie* case for the court in the first instance, nor in proving the ultimate fact to the jury, is it necessary to show tortious coöperation by evidence of an express agreement to engage in a common purpose leading to the unlawful result; but the fact of combination, as well as the appearance, may arise from inference and circumstantial evidence alone. *Archer* v. *State,* 106 Ind. 426, 432.

An eminent author says: "The actual fact of conspiracy may be inferred, as has been said, from circumstances. * * * Any joint action on a material point, or collocation of independent but coöperative acts, by persons closely associated with each other, is held to be sufficient to enable the jury to infer concurrence of sentiment." Wharton, Crim. Law (9th ed.), §1398.

In determining such *prima facie* case, it is also proper for the court to consider, in connection with the proved facts, a promise made by the prosecuting attorney of his ability and intention to show by other evidence that the accused on trial advisedly acted with another or others in the doing of things which led up to, or in preparing for the final consummation of, the unlawful act. "Sometimes, for the sake of convenience," says Professor Greenleaf in his work on evidence, "the acts or declarations of one are admitted in evidence before sufficient proof is given of the conspiracy; the prosecutor undertaking to furnish such proof in a subsequent stage of the cause." 1 Greenleaf, Evidence (15th ed.), §111; *State* v. *Grant,* 86 Iowa 216, 53 N. W. 120; *Avery* v. *State,* 10 Tex. App. 199; *Johnson* v. *State,* 29 Ala. 62, 64 Am. Dec. 383; *Hall* v. *State,* 31 Fla. 176, 12 South. 449; 6 Am. & Eng. Ency. Law (2d ed.), 869.

It should be borne in mind that the question we have relates to the action of the trial court in holding, when the McCain testimony was offered, that, from the facts then before the court and promised by the prosecuting attorney, it *prima facie* appeared that appellant and her husband had acted together in the common purpose of accomplishing the death of William Gray. At the time of the offer the case stood thus: It already appeared from the proof that appellant had a grievance against the deceased for assaulting her, which occurred a few weeks before the homicide. On the day of the tragedy the husband conveyed the wife in a buggy ten miles into the country to where the deceased could be found. When they arrived at the mill, and had been informed where Gray was, the wife insisted upon accompanying her husband down under the building where Gray was at work. Together they approached the deceased, the husband supporting the wife, stopping within a few feet of their victim; and, while the husband stood holding his wife by the arm, she produced a revolver which she carried and shot the man against whom she had the grievance. The shooting was done without excitement, without any expression of surprise, and without the slightest effort on the part of Martin Freese to restrain his wife in the execution of her purpose to kill. The design to kill had been previously formed. Naturally its formation took place after the wrong was suffered. In characterizing the conduct of the husband and wife with respect to their supposed coöperation in the killing of Gray, their relation as husband and wife, the nature of the injury suffered by the wife, their journeying together to the Red Mill, the *nonchalant* manner of both when the deed was done, and in the return home, were facts proper to be considered by the court in connection with the promise of the prosecuting attorney to connect the defendant with the purchase of the pistol. These facts were certainly sufficient, *prima facie,*

to justify the court in admitting the testimony offered by the prosecutor.

At the conclusion of the direct examination of the witness McCain, and before his cross-examination, even, appellant moved the court to strike out the witness' testimony. In any view of the case this motion was premature. ·The prosecuting attorney had not promised to prove by the witness McCain, alone, the wrongful coöperation of appellant and her husband, and the motion to strike out should have been postponed at least until the State had concluded its evidence upon that point.

The court denied appellant the right to prove by Joseph Dunlap a conversation had between the witness and Martin Freese on the day before the homicide relative to the latter's obtaining employment at the Red Mill. Martin Freese was not on trial and we think the evidence was immaterial.

The refusal of the court to give certain instructions to the jury is waived for failure to present them.

Appellant introduced two expert and two non-expert witnesses in support of the issue of insanity. One of the non-experts was her daughter who testified to facts that indicate a disordered mind.. The other, McKinney, seventy-one years old, had lived near appellant and knew her well from 1883 to 1885, since which time he knew but little about her, and had seen her only occasionally. Four or five weeks before the homicide he saw her "act strangely," like she was crazy, or intoxicated. He had heard others say that she used intoxicating liquors. He knew nothing of her mental condition about the time of the tragedy. In answer to a hypothetical question composed of facts chiefly testified to by appellant's daughter, Doctor Sterne said: "Upon that state of facts I should be very much inclined to consider that woman of unsound mind,—of course accepting as true everything stated in the hypothetical question." Doctor Payne said in answer to the same question: "I would say that the manifestations as narrated there would indicate a

mental perversion that went to a degree that would be highly suggestive of the mental state called insanity. While this is true I could not say that the manifestations as given would be sufficient to clearly establish in my mind the fact of her being absolutely insane," and upon cross-examination said: "I should hesitate upon that evidence to sign a commission of lunacy."

The State introduced no evidence in rebuttal on the question of appellant's sanity, and for this reason appellant insists that the verdict was contrary to law. The substance of the argument is that as appellant offered evidence tending to prove appellant's unsoundness of mind, the jury was bound to acquit, in the absence of direct proof to the contrary. Unquestionably the sanity of the defendant must appear beyond a reasonable doubt, and, when the presumption of sanity that attends every one has been overthrown or impaired, the State must reëstablish it by competent proof, or the defendant should be acquitted. But it is the province of the jury, under proper instructions, to determine when the condition of sanity has been made doubtful, and when the doubt has been removed.

All testimony is not proof. That only is proof which convinces. It may be, and in fact we must assume, that the jury, for what seemed to them sufficient reason, wholly discredited the testimony of appellant's daughter. She alone of all appellant's neighbors and friends detailed facts inconsistent with a sound mind, and gave all the evidence that was produced in support of the principal facts propounded to the experts as a hypothetical question. If the jury, as they had the right to do, declined to accept the facts of the hypothetical question as proved, then the answers of the experts founded thereon, whatever they amounted to, went for nothing. So it is, if the jury, being the sole judges of the weight of the evidence, found the evidence offered by appellant unworthy of belief, they had a right to disregard it.

We find no available error. Judgment affirmed.