MARSHALL MOORE *v.* STATE OF INDIANA.

[No. 572S62. Filed March 7, 1973. Rehearing denied April 30, 1974.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Anthony J. Metz,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—Defendant-Appellant, Marshall Moore, was charged by indictment with first degree murder in the shooting death of his wife Betty Jane Moore. After a trial by jury, he was found guilty of second degree murder in

Marion County Criminal Court Division I and received a sentence of life imprisonment.

During the pendency of his appeal to this Court, the Appellant filed, pro se, a motion criticizing his appellate counsel on the ground that said attorney did not participate in his trial, apparently contending that he has a constitutional right to have such trial counsel appeal his case even though a transcript is furnished at public expense for the use of appellate counsel.

Appellant further claims that such counsel has no way of knowing whether or not the transcript is correct or incorrect, but points out no claim of error. In addition, Appellant asserts that his rights were violated under the *Miranda* rule although the evidence appears uncontradicted that he stood over his wife after he fired a third shot into her body, and in the presence of more than one witness said, "I killed her. I killed her." No violation of *Miranda* could have occurred in the admission of this statement since it was voluntarily made. Appellant's final pro se contention is that the brief filed by appellate counsel amounts to mere perfunctory representation. He asks that he be allowed to amend his briefs. The record shows that prior to trial Appellant was at some points satisfied and at others dissatisfied with retained and appointed counsel. In the alternative, he asks that this appeal be withdrawn without prejudice. Finding no merit in any of the Appellant's contentions, the pro se motion is denied and we proceed to decide the issues presented in this appeal.

Appellant contends that the evidence presented at the trial is insufficient to sustain the verdict of the jury. The briefs treat the alleged insufficiency of the direct evidence separately from that of the evidence of insanity. However, we are of the view that the questions presented are identical and we will therefore treat them together.

When the sufficiency of evidence is raised on appeal, this court will consider only that evidence most favorable to the

State and all the reasonable inferences to be drawn therefrom, and if, from that viewpoint, there is substantial evidence of probative value sufficient to establish every material element of the crime, the verdict will not be disturbed. The court can neither weigh the evidence nor pass on the credibility of witnesses. *Lee* v. *State* (1972), 259 Ind. 301, 286 N. E. 2d 840; *Wardlaw* v. *State* (1972), 259 Ind. 282, 286 N. E. 2d 649; *Capps* v. *State* (1972), 258 Ind. 565, 282 N. E. 2d 833; *Gunn* v. *State* (1972), 258 Ind. 374, 281 N. E. 2d 484. A brief synopsis of only that evidence most favorable to the state reveals the following facts.

On April 16, 1966, Walter Trobaugh was living in an apartment at 331 North Temple in Indianapolis, Indiana. Around three or four o'clock in the afternoon on that date, Mr. Trobaugh helped the Appellant move some furniture into another apartment at 331 North Temple. At this time the Appellant seemed calm and normal. Later at approximately 8:00 p.m., Trobaugh again saw the Appellant, this time standing outside arguing with his wife. After the argument had continued for a time, Police Officer Theodore Judkins, a next door neighbor at 323 North Temple, went over to the Appellant and told him to "knock it off" and be quiet because he was disturbing the neighborhood. The Appellant agreed to be quiet, but his wife, Betty Jane, called out to Judkins asking that he call a cab for her. She said she was going home to her mother. Mr. Trobaugh and the Appellant went inside their respective apartments and Officer Judkins returned home to call a cab for Mrs. Moore. Approximately 10 or 15 minutes later Trobaugh again saw the Appellant arguing with his wife outside, and this time Appellant was holding a gun. Trobaugh stepped outside, but Appellant cautioned him not to get involved. A cab pulled up and when Mrs. Moore took a step toward it, the Appellant fired. The first shot hit Mrs. Moore in the chest. Trobaugh started for Officer Judkin's house and while enroute heard another shot.

He turned and saw the Appellant fire a third shot into his wife's back while she was lying face down on the ground.

Officer Judkins had been sitting in his kitchen when he heard the shots, and he immediately jumped up and ran to his porch. He saw the Appellant standing over a woman's body with a gun in his hand. Judkins subsequently disarmed the Appellant and held him until Officer Turner arrived about one minute later. Turner handcuffed the Appellant with Judkins' help. While the two officers were restraining the Appellant, the Appellant was saying, "I killed her, I killed her." The Appellant was placed in the police car and his identity was determined by a wallet check by Turner. When asked who he was, Appellant's only response was that he wanted an attorney. At this time, Appellant was subdued and weeping.

Officer Turner had custody of Appellant for about 10 minutes before he was taken to Police Headquarters. Turner continued the investigation by dispatching the gun, marked with Officer Judkins' initials to the police property room. An autopsy was performed by Dr. Dziabis and he identified photographs of the decedent as being pictures of the body that had been removed from 331 North Temple. One of the bullets was recovered and the cause of death was determined to be two bullet wounds in the heart. At the trial, Mrs. Moore's sisters testified that they had each received a visit from Appellant prior to the shooting. Dorothy Barron testified that around March 1, 1966, the Appellant stopped by her house to ask for street directions. While there, he said that he was going to kill Betty Jane and that he could get away with it by pleading insanity. Mrs. Barron also said that Appellant had a gun in his possession. Jewel Ross testified that the day before her sister's death the Appellant came to her house and she fixed him some coffee. She went to get some sugar and when she turned around, Appellant had a gun in his hand. Appellant told her that he could kill her and then Betty Jane would come to the funeral and he could kill her too. The Appellant

said he could kill someone and then act like he was insane and he could be proved insane. The Appellant was pointing the gun at Jewel during that time.

Mrs. Moore's daughter, Emma Rose Hendrickson testified that she witnessed an argument between the Appellant, who is her stepfather, and her mother, where the Appellant begged Mrs. Moore not to leave him or he would have to kill her.

The direct evidence presented in this case was clearly sufficient to sustain the jury's conclusion that Marshall Moore shot and killed his wife. The alleged error in the failure to prove that the gun introduced at trial was the same gun that took Mrs. Moore's life is without merit. From the evidence introduced, the jury could reasonably infer that state's Exhibit #5 was the gun used to kill Betty Moore. But even if it could not, the evidence is overwhelming that Appellant killed his wife with a gun. The eyewitness testimony was sufficient to obviate the necessity for the state to prove that any particular weapon or bullets killed Mrs. Moore. Appellant claims that the State failed to prove that the gun was loaded with gun powder and that the bullets were made of metal as alleged in the indictment. This failure of proof does not constitute reversible error. In *Payne* v. *State* (1970), 254 Ind. 100, 104, 257 N. E. 2d 818, 821, we held that where there is a variance between the affidavit and the proof, it must have been of such a nature as to have misled the defendant in the preparation of his defense, or be of such a degree as to be likely to place him in double jeopardy. See also, *Majors* v. *State* (1969), 252 Ind. 672, 677, 251 N. E. 2d 571, 574; *Anderson* v. *State* (1966), 247 Ind. 552, 556, 217 N. E. 2d 840, 843; *Madison* v. *State* (1955), 234 Ind. 517, 541, 130 N. E. 2d 35, 46 (concurring opinion of Arterburn, J.). We believe that there is substantial evidence of probative value to sustain the jury's conclusion that Appellant shot and killed his wife.

The Appellant pleaded insanity. The court appointed two psychiatrists to examine the defendant to determine his mental

capacity at the time of the commission of the act. These Court-appointed psychiatrists testified at the close of all the evidence that their conclusion was that at the time the Appellant shot his wife he was without sufficient mental capacity to conform his conduct to the requirements of the law. This court has held that a jury faced with the issue of a defendant's insanity is not required to depend upon expert testimony alone. Lay testimony on the issue of insanity is competent evidence for the trier of fact to consider together with all the other evidence. *Adams* v. *State* (1971), 259 Ind. 64, 271 N. E. 2d 425, 428; *Summerlin* v. *State* (1971), 256 Ind. 652, 660, 271 N. E. 2d 411, 415; *Johnson* v. *State* (1970), 255 Ind. 324, 328, 264 N. E. 2d 57, 60: *Hill* v. *State* (1969), 252 Ind. 601, 615, 251 N. E. 2d 429, 437.

In the case at bar there was sufficient lay testimony presented at the trial to sustain the jury's verdict that the Appellant was sane. Immediately after the shooting, Appellant, though subdued and weeping, nevertheless refused to identify himself when asked, responding only that he wanted to see a lawyer. No objection was made at trial to the introduction of that testimony. In addition, there is the testimony of the decedent's sisters who both indicated that the defendant had made threats on the life of his wife and had said that he could plead insanity and get away with it. The most recent of those incidents was one day before the crime was committed. The jury, having heard all of the evidence, was thus faced with conflicting evidence on the issue of the sanity of the defendant. We have often held that the jury is the exclusive judge of all the evidence and may draw its own conclusions. *Young* v. *State* (1972), 258 Ind. 246, 252, 280 N. E. 2d 595, 599; *Johnson* v. *State* (1970), 255 Ind. 324, 328, 264 N. E. 2d 57, 59-60; *Shipman* v. *State* (1962), 243 Ind. 245, 253, 183 N. E. 2d 823, 827; *Brattain* v. *State* (1945), 223 Ind. 489, 496-97, 61 N. E. 2d 462, 465; *Walters* v. *State* (1915), 183 Ind. 178, 179-80, 108 N. E. 583, 584;

*Freese* v. *State* (1903), 159 Ind. 597, 604, 65 N. E. 915, 917-18. In *Freese, supra,* the Court stated:

> ". . . The substance of the argument is that as appellant offered evidence tending to prove appellant's unsoundness of mind, the jury was bound to acquit, in the absence of direct proof to the contrary. Unquestionably the sanity of the defendant must appear beyond a reasonable doubt, and, when the presumption of sanity that attends every one has been overthrown or impaired, the State must re-establish it by competent proof, or the defendant should be acquitted. *But it is the province of the jury, under proper instructions, to determine when the condition of sanity has been made doubtful, and when the doubt has been removed."* Id. at 604, 65 N. E. 2d 917-18. (emphasis added)

In the case at bar the evidence casting doubt on defendant's sanity was interposed by way of the court-appointed psychiatrists, but nonetheless the jury was entitled to reach its own conclusion after having heard all the evidence bearing on that issue, including his action shortly before and after the shooting. Trobaugh, a neighbor, testified that shortly before the shooting Appellant seemed calm, perfectly all right, and like an average person. Officer Judkins testified that at the time just before the shooting, Moore was coherent, very nice and polite. When the evidence is in conflict this court may not substitute its judgment for that of the jury.

For the reasons stated, the judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported in 293 N. E. 2d 28.