RAY SMITH *v.* STATE OF INDIANA.

[No. 1275S364. Filed September 13, 1976.]

*Harriette Bailey Conn,* Public Defender of Indiana, *David P. Freund,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was indicted for first degree murder on November 4, 1965, of one, Norman Sharp. He entered a plea of not guilty and a special plea of insanity and a plea of self defense. Trial by jury resulted in a verdict of guilty of second degree murder. On May 20, 1966, appellant was sentenced to life imprisonment. Subsequently appellant filed

a belated motion to correct errors which was overruled on September 26, 1975. From that ruling he now appeals.

The record reveals the following evidence: Appellant and his wife were having marital difficulties. When appellant got home from work early in the morning of November 4, 1965, his wife was gone. After searching for her he found her with two female companions in a tavern in Rushville. Appellant told his wife to leave with him but she refused. He then went to the sheriff's office in Rushville for help in getting his wife home. Appellant was told that the sheriff was not in. He next sought help from the city police in Rushville but they advised him that they could do nothing.

Appellant returned home and again went to the tavern at closing time. Appellant's wife, the decedent Norman Sharp, Hettie May Woods and Dick Sampson had just left the tavern together and were in Sampson's car when appellant drove beside them and stopped them. Appellant got out of his car and walked over to Sampson's car. He pointed a pistol at his wife and Norman Sharp, who were seated in the back seat of the car, and demanded that his wife get out. He then fired two shots, one hitting Sharp and the other hitting his wife. Both Sharp and appellant's wife died of the wounds so received.

Appellant's sole assignment of error is that the verdict is not supported by sufficient evidence in that the State failed to prove beyond a reasonable doubt that appellant was legally sane at the time of the offense. The following evidence was presented on the question of appellant's sanity:

Donald Lee Roberts worked with appellant until midnight on November 3, 1965, which was about two hours before the shooting. He testified that appellant appeared to be sane.

Robert Sturgeon was a security guard at the plant where appellant worked and had known appellant for about eighteen years. He had stopped and talked with appellant while making his 11:00 p.m. rounds on November 3, 1965, and had

seen appellant leave at midnight. He testified that appellant appeared normal and not insane.

Dorothy George, the wife of the Rush County Sheriff, talked with appellant in the early morning hours of November 4, 1965, when he came to the jail to seek the sheriff's assistance in removing his wife from the bar. Mrs. George testified that appellant appeared sane. When told that the sheriff was not available the appellant went to the Rushville City Police office where he talked with Robert VanSickle, a captain on the force. Captain VanSickle testified that appellant was sane.

June Ellen Whitfield, appellant's stepdaughter, saw appellant when he got home from work in the early hours of November 4, 1965. When questioned about appellant's sanity she stated that appellant seemed normal and was not insane.

Homey Lay, who had known appellant for several years, testified that he was awakened by appellant at 3:00 a.m. on November 4, 1965, less than one hour after the shootings. Appellant wanted some beer which Lay gave him. Appellant seemed to be "kidding around" but, in Lay's opinion, was sane.

Burt George, the Rushville County Sheriff, James Ravenscraft, the Chief of the Rushville City Police and Elvin Colmer, an Indiana State Police Sergeant, observed and talked with appellant after he had been arrested in Batesville between five and six hours after the shootings. Each testified that appellant was sane.

Appellant argues that each of these witnesses either contradicted himself by describing unusual behavior on the part of appellant or could not have formed an opinion as to appellant's ability to resist the impulse to kill. These matters were before the jury. It was for them to weigh the evidence and to determine what inferences should be drawn therefrom. Where the sufficiency of the evidence of sanity is questioned the court will look to the evidence most favorable to the appellee and the inferences to be drawn therefrom. This Court will not reweigh the evidence nor determine the credibility of witnesses. *Blake* v. *State*, (1975)

262 Ind. 659, 323 N.E.2d 227, 45 Ind. Dec. 616. Testimony of lay witnesses may be considered on the issue of defendant's sanity. *Moore* v. *State*, (1973) 260 Ind. 154, 293 N.E.2d 28, 35 Ind. Dec. 415.

Dr. Hazel Stevens, a clinical psychologist, examined and tested appellant at the request of Dr. E. Rogers Smith. She testified that the first time she tested appellant he had an IQ of 57. However a second test indicated an IQ of 71. It was the opinion of Dr. Stevens that appellant was psychotic and insane.

Dr. E. Rogers Smith, a psychiatrist employed by appellant, examined appellant and reviewed the reports of Dr. Stevens. Dr. Smith testified that appellant was psychotic and insane.

Dr. O. B. McAtee, a psychiatrist appointed by the court, examined appellant and testified that appellant was sane and without psychosis at the time of the offense. Dr. McAtee stated that appellant could distinguish right from wrong, although he did not have full comprehension of the social consequences and the chain of events that would naturally follow. Dr. McAtee testified that this lack of comprehension was due to a combination of appellant's "mental capacity, mental retardation, state of depression and agony that he was in," and not due to psychosis.

Dr. Theodore C. C. Fong, another psychiatrist appointed by the court, examined appellant and came to the opinion that appellant was legally sane and without psychosis. Dr. Fong explained that he meant that appellant knew the difference between right and wrong and had sufficient will power to resist the impulse to kill.

The jury may consider evidence from the court-appointed physicians as well as evidence from experts employed by the defense or prosecution. IC 35-5-2-2 (Burns 1975). However, the testimony of expert witnesses is not conclusive. *Moore* v. *State, supra.*

We therefore hold there is substantial evidence in this

record to support the finding of the jury that the appellant was sane. The trial court is affirmed.

Arterburn, DeBruler, Prentice and Hunter, JJ., concur.

NOTE.—Reported at 354 N.E.2d 216.